**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

GENERAL INJECTABLES & VACCINES, INC.,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

No.

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION


Mark J. Biros*
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue, NW
Suite 400 South
Washington, DC 20004-2533
202.416.6800
202.416.6899 (fax)
mbiros@proskauer.com

*Attorney of Record for Plaintiff General Injectables & Vaccines, Inc.*

*Of counsel:*

Lawrence Z. Lorber
James F. Segroves
Meredith C. Bailey
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue, NW
Suite 400 South
Washington, DC 20004-2533
202.416.6800
202.416.6899 (fax)

Gilbert J. Ginsburg
LAW OFFICES OF
GILBERT J. GINSBURG
1250 24th Street, NW
Suite 350
Washington, DC 20037
202.776.7772
202.776.7773 (fax)


* Application for admission to be filed in accordance with appendix C, paragraph 25 of the Rules of the United States Court of Federal Claims.

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... iii

INTRODUCTION .......... 1

QUESTIONS PRESENTED .......... 2

STATEMENT OF THE CASE .......... 2

STANDARD OF REVIEW .......... 8

ARGUMENT .......... 10

I. CDC ACTED ARBITRARILY, CAPRICIOUSLY AND CONTRARY TO LAW IN DECIDING TO OVERRIDE THE CICA STAY .......... 10

A. CDC's Determination Is Not Clearly Premised On The Correct Legal Standard .......... 11

B. CDC's Rationale For Its Decision Is Contradicted By The Evidence Before The Agency .......... 13

C. CDC's Determination Failed To Include A Finding That Performance By McKesson Was Urgent And Compelling .......... 18

D. CDC's Claim That The New Contract Will Save Money Cannot Justify Overriding A Pre-Award Stay Under CICA .......... 20

E. CDC's Determination Failed To Consider What Would Happen If GIV Were To Win Its Bid Protest .......... 21

II. GIV IS ENTITLED TO PRELIMINARY INJUNCTIVE RELIEF .......... 21

A. GIV Is Likely To Succeed On The Merits Challenging CDC's Override Of The CICA Pre-Award Stay .......... 21

B. GIV Will Suffer Irreparable Injury If The Court Does Not Grant The Requested Relief .......... 23

C. The Balance Of Hardships Favors Granting GIV The Requested Relief .......... 24

D. It Is In The Public Interest To Grant GIV Injunctive Relief .......... 24

CONCLUSION .......... 26

| | | |
|---|---|---|
| EXHIBITS: | Exhibit 1 | Declaration of Tracy B. Puckett (Sept. 28, 2006) |
| | Exhibit 2 | Declaration of Lawrence Z. Lorber (Oct. 2, 2006) |
| | Exhibit 3 | Declaration of Howard N. Kenyon Jr. (Sept. 29, 2006) |
| | Exhibit 4 | *Automation Techs., Inc. v. United States*, --- Fed. Cl. ---, No. 06-599C, 2006 WL 2720642 (Sept. 21, 2006) |
| | Exhibit 5 | Proposed Order (Non-Injunctive Relief) |
| | Exhibit 6 | Proposed Order (Injunctive Relief) |

## TABLE OF AUTHORITIES

### CASES

*Advanced Sys. Dev., Inc. v. United States*,
72 Fed. Cl. 25 (2006) ........ passim

*Automation Techs., Inc. v. United States*,
--- Fed. Cl. ---, No. 06-599C, 2006 WL 2720642 (Sept. 21, 2006) ........ 10, 21

*Chapman Law Firm Co. v. United States*,
65 Fed. Cl. 422 (2005) ........ 10

*CIGNA Gov't Servs., LLC v. United States*,
70 Fed. Cl. 100 (2006) ........ passim

*DTH Mgmt. Group v. Kelso*,
844 F. Supp. 251 (E.D.N.C. 1993) ........ 18

*Filtration Dev. Co., LLC v. United States*,
59 Fed. Cl. 658 (2004) ........ 13

*FMC Corp. v. United States*,
3 F.3d 424 (Fed. Cir. 1993) ........ 9

*Magellan Corp. v. United States*,
27 Fed. Cl. 448 (1993) ........ 22

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) ........ 9, 11, 20

*PGBA, LLC v. United States*,
57 Fed. Cl. 655 (2003) ........ passim

*RAMCOR Servs. Group, Inc. v. United States*,
185 F.3d 1286 (Fed. Cir. 1999) ........ 8, 9

*Spherix, Inc. v. United States*,
62 Fed. Cl. 497 (2004) ........ passim

### STATUTES

5 U.S.C. § 706 ........ 9

5 U.S.C. § 706(2)(A) ........ 9

28 U.S.C. § 1491(b)(1) .......... 8

28 U.S.C. § 1491(b)(4) .......... 9

31 U.S.C. § 3553(c)(1) .......... 6

31 U.S.C. § 3553(c)(2) .......... 1, 11, 12

31 U.S.C. § 3553(c)(2)(A) .......... 21

31 U.S.C. § 3553(c)(2)(B) .......... 12

31 U.S.C. § 3553(d)(3)(C)(i) .......... 11, 21

42 U.S.C. § 247b .......... 2

42 U.S.C. § 1396a(a)(62) .......... 2

42 U.S.C. § 1396s .......... 2

42 U.S.C. § 1396s(a)(1)(A) .......... 2

42 U.S.C. § 1396s(a)(1)(B) .......... 2

42 U.S.C. § 1396s(b)(2)(A) .......... 2

42 U.S.C. § 1396s(d)(1) .......... 3

Omnibus Budget Reconciliation Act of 1993,
Pub. L. No. 103–66, § 13631, 107 Stat. 312, 636-43 .......... 2

## OTHER AUTHORITIES

Gov't Accountability Office, *Childhood Vaccines: Ensuring an Adequate Supply Poses Continuing Challenges*, Rep. No. GAO-02-987 (Sept. 2002) .......... 3

Office of Management & Budget, *OMB Circular A-128 Compliance Supplement* (Mar. 2006) ... 3

## INTRODUCTION

Plaintiff General Injectables & Vaccines, Inc. ("GIV") seeks declaratory and injunctive relief to prevent Defendant United States of America, acting by and through the Centers for Disease Control and Prevention ("CDC"), from violating the pre-contract-award stay requirements mandated by the Competition in Contracting Act ("CICA"), 31 U.S.C. § 3553(c)(2). After filing timely pre-award protests with the Government Accountability Office ("GAO") in August of this year, GIV was recently informed that despite the fact that GAO will render a decision in less than sixty days, CDC nonetheless decided to override the CICA stay. CDC then awarded the contract to another bidder, McKesson Specialty Distribution, LLC ("McKesson").

CDC's decision to override the CICA stay is invalid because (1) CDC's determination is not clearly premised on the correct legal standard, (2) the stated bases for CDC's decision are contradicted by the evidence before the agency, (3) CDC proffered no reasons why it was necessary that McKesson commence performance of the contract during the pendency of GIV's bid protests, (4) CDC's claim that the new contract might save it money cannot justify overriding a pre-award stay under CICA, and (5) CDC's determination failed to consider what would happen if the GAO process determined that the award to McKesson was illegal. All in all, CDC's actions were arbitrary, capricious and contrary to law.

Because of this GIV respectfully requests that this Court issue an order declaring that CDC's decision to override the pre-award CICA stay was arbitrary and capricious, which would reinstitute the CICA stay as a matter of law. In the alternative and until such time as this Court can issue a ruling on the merits of GIV's complaint or until such time as GAO issues a decision on GIV's pending bid protests, GIV respectfully requests that this Court issue a temporary

restraining order and/or a preliminary injunction precluding CDC and McKesson from beginning or continuing performance under the contract.

## QUESTIONS PRESENTED

1. Is GIV entitled to a judgment declaring that CDC's decision to override the CICA stay was arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law?

2. Is GIV entitled to an order enjoining CDC and McKesson from beginning or continuing performance under the contract pending GAO's determination of GIV's bid protest?

## STATEMENT OF THE CASE

### *The Vaccines For Children And Section 317 Grant Programs*

In 1993, Congress enacted a program for the distribution of pediatric vaccines, commonly known as the Vaccines for Children program ("VFC"). *See* Omnibus Budget Reconciliation Act of 1993, Pub. L. No. 103–66, § 13631, 107 Stat. 312, 636-43 (codified at 42 U.S.C. §§ 1396a(a)(62) and 1396s). The VFC provides federally purchased vaccine to certain eligible children (e.g., children that are uninsured or Medicaid-eligible). *See* 42 U.S.C. § 1396s(b)(2)(A). Eligible children may not be charged for the cost of vaccines covered by the VFC. § 1396s(a)(1)(A). In addition, federal law requires that vaccines covered by the VFC be supplied to participating health care providers free of charge. § 1396s(a)(1)(B).

Through a second program, commonly known as the section 317 grant program because it was established under section 317 of the Public Health Service Act, 42 U.S.C. § 247b, project grants are provided for preventive health services including immunization programs. *See generally* GAO, *Childhood Vaccines: Ensuring an Adequate Supply Poses Continuing*

*Challenges* at 5-6, Rep. No. GAO-02-987 (Sept. 2002).[1] Participants in the section 317 grant program currently include sixty-four state, local and territorial immunization programs, commonly referred to as "projects." *See id.* at 6. Section 317 funds are intended to help grantees maintain immunization infrastructures or purchase vaccines not covered by private insurance or not available through the VFC. *Id.* In addition, state immunization programs can use their own funds to buy vaccines through CDC contracts. *Id.*

Under the VFC, the federal government negotiates purchase contracts with vaccine manufacturers. *See* 42 U.S.C. § 1396s(d)(1). States, in turn, develop and operate programs designed to ensure effective delivery of vaccination to eligible children. *See generally* Office of Management & Budget, *OMB Circular A-128 Compliance Supplement* § 4-93.268 (Mar. 2006).[2] Some states maintain their own vaccine depots, while others pay a third-party vendor to store and distribute vaccine. *Id.*

As an essential part of the VFC program for over eleven years, GIV has distributed hundreds of millions of doses of publicly purchased vaccines for use by participating health care providers in as many as twenty-eight states. Puckett Decl. ¶¶ 3, 8.[3] Annually, GIV ships tens of millions of doses of vaccine to VFC program participants. *Id.* ¶ 8. For example, this year alone,

---

[1] Available at http://www.gao.gov/new.items/d02987.pdf.

[2] Available at http://www.whitehouse.gov/omb/circulars/a133_compliance/06/hhs.pdf.

[3] References to the "Puckett Decl." refer to the Declaration of Tracy B. Puckett, GIV Senior Manager for Government Contracting (Sept. 28, 2006), a copy of which is attached as Exhibit 1. GIV currently maintains contracts with the following states/projects: Arizona, California, Colorado, Connecticut, Hawaii, Idaho, Indiana, Kansas, Kentucky, King County (Washington), Maine, Maryland, Minnesota, Missouri, Nebraska, Nevada, New York, New York City, North Carolina, Oklahoma, Oregon, Pennsylvania, Philadelphia, Tennessee, Texas, Utah, Virginia, and Wyoming. Puckett Decl. ¶ 4.

GIV has already shipped approximately twenty-six million doses of vaccine. *Id.* And importantly, in its over eleven years as a VFC program participant during which it has delivered hundreds of millions of vaccine doses, GIV has never received a single deficiency citation from CDC or any of the state health departments of VFC participants with which GIV has worked. *Id.* ¶¶ 3, 5.

***Procurement History***

In 2004, CDC moved to consolidate the vaccine distribution services provided under separate contracts into a more integrated system. *Id.* ¶ 9. Because of GIV's extensive and unblemished experience in the VFC program, CDC relied on GIV to provide information necessary to understand the breadth and scope of the anticipated program and to serve as a basis for the procurement. *Id.* ¶¶ 5, 10. For example, GIV provided CDC with its "Detailed Shipment Analysis" for all VFC providers. *Id.* ¶ 11. This analysis included such things as shipment size and information for every VFC participant who was shipped vaccine by GIV. *Id.*

On November 1, 2005, CDC issued Solicitation No. 2006-N-08248 (the "RFP") for a centralized vaccine distribution contract. *See* CDC, *Presolicitation Notice for Solicitation No. 2005-N-02146* (Nov. 1, 2005).[4] The RFP sought offers for centralized receipt, storage and distribution of licensed vaccines under federal and non-federal contracts, as directed by CDC. F&D ¶ 2. The RFP provided a timeline for states/projects to transition to centralized distribution. Implementation of the centralized distribution system was to occur in three phases, starting with "pilot" sites in early 2006. RFP at 9. Completion of the three phases, according to

[4] Available at http://www.fbo.gov/servlet/Documents/R/448792Id. A previous solicitation, CDC Solicitation No. 2005-N-02146, was issued by CDC on July 1, 2005, but had to be withdrawn by the agency due to "technical issues." *Id.*

the timeline outlined in the RFP, would not occur until late 2007. *Id.* The RFP also provided that a successful bidder would begin performance no later than thirty days after the award of the contract. *Id.*

On June 6, 2006, GIV timely submitted its final proposal to CDC. Puckett Decl. ¶ 12. As required by the RFP, GIV included material estimates pertaining to the distribution of vaccine as well as vaccine stockpiling costs. *Id.* ¶ 14.

***GIV's Elimination From The Competitive Range And CDC Debriefing***

On or about July 18, 2006, CDC informed GIV that the company had been eliminated from the "competitive range" of qualified offers. Consequently, it would no longer be considered for the contract. *Id.* ¶ 15. The competitive range is comprised of the qualified offers rated highest by the contracting officer after comparing each proposal against the solicitation evaluation criteria. *See* FAR 15.306(c). CDC stated that while GIV's proposal was technically acceptable under the RFP's evaluation criteria, based upon CDC's perception, the level of cost proposed resulted in GIV's exclusion from the competitive range. Puckett Decl. ¶ 16.

On July 20, 2006, GIV requested a pre-contract-award debriefing by CDC pursuant to FAR 15.505. Lorber Decl. ¶ 3.[5] On July 27, 2006, CDC responded to GIV's debriefing request in writing. *Id.* ¶ 4. The debriefing letter stated that GIV's technical proposals, business proposals and oral presentations were all acceptable. *Id.* However, CDC reiterated that the level of cost proposed by GIV, at least as perceived by CDC, resulted in the company being excluded from the competitive range. *Id.*

---

[5] References to the "Lorber Decl." refer to the Declaration of Lawrence Z. Lorber, Outside Counsel to GIV (Oct. 2, 2006), a copy of which is attached as Exhibit 2.

***GIV's GAO Protests***

GIV filed a timely protest with GAO on August 7, 2006, based on its exclusion from the competitive range for the CDC's vaccine distribution program. *Id.* ¶ 5. GAO notified CDC of the protest on August 8, 2006. F&D ¶ 5. Under CICA, GAO's notification to CDC stayed any award of the contract. *See* 31 U.S.C. § 3553(c)(1).

GIV filed a supplemental protest on August 25, 2006. Lorber Decl. ¶ 7. The grounds for that protest were that two members of the technical panel that evaluated the bidders' qualifications were impermissibly pressured to increase the technical scores of one of GIV's competitor-bidders. *Id.* This improper change in the technical scores prejudiced GIV, because, according to the RFP, cost would be a determinative factor only if the bids were substantially equal from a technical perspective. RFP amend. V at 13.

GAO subsequently informed counsel for GIV that GAO would render a decision on the bid initial protest and supplemental bid protest on November 16, 2006. Lorber Decl. ¶ 17.

***CDC's Override Of The CICA Stay***

On September 12, 2006, CDC informed GIV that despite GIV's pending protests, CDC had awarded the contract to McKesson. *Id.* ¶ 8. On the morning of September 13, 2006, counsel for GIV received a facsimile transmission from CDC counsel that contained the agency's Findings and Determination ("F&D"), the critical document to support the override of the statutory stay, which allegedly preceded CDC's decision to award the contract to McKesson. *Id.* ¶ 16. Upon preliminary review by GIV's counsel, the F&D appeared to be legally insufficient because it was not signed by the agency's head of procurement activity, as required by CICA. *Id.*; *see also* 31 U.S.C. § 3553(c)(1). Later in the morning of September 13, 2006, after a conference call between GAO and counsel for GIV, a second facsimile transmission from CDC

counsel was received that contained CDC's F&D, this time containing a signature page bearing the signature of the head of CDC's procurement activity. Lorber Decl. ¶ 18. The F&D contained only the following language regarding the agency's determination:

> DETERMINATION:
>
> Based on the foregoing and in accordance with FAR 33.104(b)(1) and HHSAR 333.104(b)(1), it is hereby determined to be in the best interest of the Government to award this contract to McKesson prior to the disposition of the protest by GAO.

F&D at 3.

At other points in the document, CDC speculated that circumstances did not permit waiting for GAO to complete its process prior to awarding the contract because the delay could have a "negative public health impact." F&D ¶ 7. This possible negative impact, according to the F&D, could result from the delay associated with the bid protest encroaching on transition timelines, which were developed in association with state immunization projects. *Id.* CDC noted that certain contracts with upcoming expiration dates would be transitioning to the centralized vaccine distribution contract and that CDC had concerns *vis-à-vis* waiting until GAO completed its process. *See* ¶¶ 7(A)-(C). One contract was the New York Multi-State Contract, which was to expire on March 31, 2007. *See id.* ¶ 7(B). Another involved New Jersey and, according to the F&D, it was to expire on November 30, 2006. *See id.* ¶ 7(C). CDC also cited contracts with a group of states that included California and Texas, which were to expire prior to March 31, 2007. *See id.* ¶ 7(A).[6]

---

[6] At the time the F&D was issued, CDC apparently was under the impression that GAO's decision on GIV's supplemental protest would be rendered on December 4, 2006. During the September 13, 2006 telephone call with GAO, it was explained that decisions on all aspects of the protest would be rendered by November 16, 2006. This misapprehension does not alter the appropriate analysis of CDC's actions. Relying upon a GAO decision on either November 16th

(continued)

The F&D did not specifically address how waiting for the GAO decision in this matter might impact transitioning the New York contract or any other contract it identified as expiring on March 31, 2007, four months after the GAO decision was to be rendered. Curiously, CDC apparently was unaware of, or it at least did not mention, the fact that in August 2006 GIV had agreed with Mary Schneider of the Office of General Services of the State of New York to extend the New York Multi-State contract beyond its March 2007 expiration date. Puckett Decl. ¶ 20. Moreover, CDC conveniently failed to mention that five months before asserting in the F&D that the expiration of the New Jersey contract might cause a gap in vaccine service, CDC had sought, and received, GIV's agreement with the state of New Jersey to provide vaccines to it so that such no such gap would occur on November 30, 2006. *Id.* ¶¶ 17-18. Instead, CDC merely recited in the F&D that it was in the best interest of the government to award the contract to McKesson prior to the completion of the GAO process. F&D at 3.

On or about September 28, 2006, GAO ruled that grounds asserted in GIV's initial bid protest would not be entertained, not by a ruling on the merits but rather for procedural reasons. However, GIV's supplemental bid protest plus additional grounds for protest that were asserted after review of documents only recently produced pursuant to a GAO order will still be decided on November 16, 2006.

## STANDARD OF REVIEW

An agency's decision to override a pre-award CICA stay is subject to judicial review under the Tucker Act, 28 U.S.C. § 1491(b)(1). *RAMCOR Servs. Group, Inc. v. United States*,

---

or December 4th as to the New Jersey contract to support the override, as we discuss below, is arbitrary because CDC, itself, had secured the agreement of GIV to supply New Jersey when its contract expired on November 30, 2006.

185 F.3d 1286, 1290 (Fed. Cir. 1999). The Tucker Act, in turn, provides that this Court should review the agency's decision using the familiar standards established by the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. 28 U.S.C. § 1491(b)(4); *RAMCOR*, 185 F.3d at 1290. The APA directs a court to overturn agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Four circumstances have been identified by the Supreme Court as constituting arbitrary and capricious agency action:

> [I]f the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation of its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*PGBA, LLC v. United States*, 57 Fed. Cl. 655, 657 (2003) (quoting *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

With respect to a motion requesting preliminary injunctive relief, a plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) a harm to the plaintiff outweighs the harm to the defendant; (3) the public interest is served by enjoining the defendant; and (4) irreparable injury to the plaintiff if the defendant is not enjoined, including, but not limited to, the absence of an adequate remedy at law. *PGBA*, 57 Fed. Cl. at 656. The foregoing need only be demonstrated by a preponderance of the evidence. *Spherix, Inc. v. United States*, 62 Fed. Cl. 497, 505 (2004). Moreover, no single factor is dispositive, as "the weakness of the showing regarding one factor may be overborne by the strength of the others." *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993).

## ARGUMENT

CDC's decision to override the pre-award CICA stay was arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law. As a result, this Court should issue an order declaring invalid CDC's decision to override the pre-award stay. Alternatively, this Court should enjoin CDC and McKesson from beginning or continuing performance under the contract until GAO resolves GIV's pending bid protest.

### I. CDC ACTED ARBITRARILY, CAPRICIOUSLY AND CONTRARY TO LAW IN DECIDING TO OVERRIDE THE CICA STAY

To resolve this case, the Court need not address the question of whether GIV is entitled to preliminary injunctive relief. This Court has repeatedly held that it need not address the four injunctive relief factors if it finds that an agency's decision to override a CICA stay lacks validity. *See Advanced Sys. Dev., Inc.*, 72 Fed. Cl. 25, 36 (2006); *CIGNA Gov't Servs., LLC v. United States*, 70 Fed. Cl. 100, 114 (2006); *Chapman Law Firm Co. v. United States*, 65 Fed. Cl. 422, 424 (2005). In cases challenging an agency's decision to override a CICA stay, "Congress did not require any evaluation of injunctive relief factors as a prerequisite to a [CICA stay] upon the filing of a protest with the GAO." *Chapman Law Firm*, 65 Fed. Cl. at 424.

For example, this Court's most recent opinion addressing a legal challenge to an agency's override of a CICA stay was made available to the public just a few days ago. *See Automation Techs., Inc. v. United States*, --- Fed. Cl. ---, No. 06-599C, 2006 WL 2720642 (Sept. 21, 2006) (copy attached as Exhibit 4). In *Automation Technologies*, the Court reiterated that to reinstate a CICA stay that had been overridden by an agency, the Court could avoid altogether the issue of injunctive relief and could instead dispose of the case by finding that the agency's decision overriding the stay was invalid. *See id.* at *9 n.5 (citing *Advanced Systems*, 72 Fed. Cl. at 36;

*CIGNA*, 70 Fed. at 114, *Chapman Law Firm*, 65 Fed. Cl. at 424). Such a finding is particularly appropriate in the case at bar because (1) CDC's determination was not clearly premised on the appropriate legal standard, (2) CDC's explanation of its decision is contradicted by the evidence before the agency, (3) CDC proffered no reason as to why it was essential that McKesson perform the obligations of the contract during the pendency of GIV's bid protests, (4) CDC's claim that a new contract will save money cannot justify overriding a pre-award stay under CICA, and (5) CDC's determination failed to consider the consequences if the GAO process were to conclude that the award to McKesson was illegal, thereby making the agency's decision arbitrary and capricious. *See State Farm*, 463 U.S. at 43; *PGBA*, 57 Fed. Cl. at 657.

### A. CDC's Determination Is Not Clearly Premised On The Correct Legal Standard

Congress has greatly limited an agency's discretion to override a pre-award CICA stay. More specifically, CICA provides:

> The head of the procuring activity responsible for award of a contract may authorize the award of the contract (notwithstanding a protest of which the Federal agency has notice under this section)—
>
> (A) upon a written finding that urgent and compelling circumstances which significantly affect interests of the United States will not permit waiting for the decision of the Comptroller General under this subchapter; and
>
> (B) after the Comptroller General is advised of that finding.

31 U.S.C. § 3553(c)(2). In comparison, CICA provides that an agency may override a post-award stay based on a finding that "performance of the contract is in the best interests of the United States" *or* "urgent and compelling circumstances that significantly affect interests of the United States will not permit waiting for the decision of the Comptroller General concerning the protest." § 3553(d)(3)(C)(i). As this Court has recognized, a pre-award override is "held to a

higher standard than an override that is instituted after contract performance has begun[.]" *Spherix*, 62 Fed. Cl. at 507.[7]

"[I]n the narrow context of statutory compliance with the automatic stay provisions of CICA, it is unnecessary to search beyond the four corners of the override decision—the agency either complied with the requirements of [CICA], or it did not." *Advanced Systems*, 72 Fed. Cl. at 33. In overriding the pre-award stay here, CDC made one formal determination and one formal determination only, concluding the F&D with the following:

> <u>DETERMINATION:</u>
>
> Based on the foregoing and in accordance with FAR 33.104(b)(1) and HHSAR 333.104(b)(1), it is hereby determined to be in the best interest of the Government to award this contract to McKesson prior to the disposition of the protest by GAO.

F&D at 3.

While the F&D contains a few scattered references to "urgent and compelling circumstances," such incidental references are not made as a "determination." Consequently, it is not clear, as it should be, that CDC in fact applied the correct legal standard in reaching its decision to override the pre-award CICA stay. Lack of clarity also exists as to whether CDC in fact authorized the awarding of the contract to McKesson before notifying GAO of CDC's decision to override the pre-award stay, which in and of itself would constitute a violation of CICA. *See* 31 U.S.C. § 3553(c)(2)(B).

---

[7] GIV recognizes that there is a lack of unanimity in this Court's decisions addressing whether the "best interests" and "urgent and compelling circumstances" standards of § 3553(d)(3)(C)(i) place different burdens on an agency to justify its decision overriding a post-award stay. *Compare Spherix*, 62 Fed. Cl. at 507 (advocating lesser showing for "best interests" determination), *with Advanced Systems*, 72 Fed. Cl. at 31 (rejecting *Spherix* and holding that both determinations place high burden on agency). Under either analysis, GIV is entitled to the relief it seeks here.

CDC's failure in the F&D to even recite the correct legal standard creates serious doubt as to whether the agency complied with § 3553(c)(2) in rendering its decision. Because the stay provisions of CICA are to be strictly interpreted against the overriding of a stay, *cf. CIGNA*, 70 Fed. Cl. at 112, this Court should set aside CDC's decision.[8]

**B. CDC's Rationale For Its Decision Is Contradicted By The Evidence Before The Agency**

CDC's decision to override the pre-award CICA stay was based on two primary considerations: impact on public health and financial impact. Neither consideration justifies the agency's decision to override the pre-award CICA stay in this case.

An agency must take reasonable steps to accurately determine and describe its needs when seeking to circumvent normal procurement procedures. *See Filtration Dev. Co., LLC v. United States*, 59 Fed. Cl. 658, 663 (2004). CDC justified its decision to override the CICA stay by asserting that "[a]ny delay in the award of the contract [would] have a negative public health impact." F&D ¶ 7. In support of this sweeping assertion, the agency stated:

> Timely vaccine supply distribution is critical to maintaining immunization services throughout the country. Any disruption in vaccine supply distribution would impact the health of our nation's infants, children and adults. We experienced severe vaccine supply shortages several years ago which resulted in denying children life-saving immunization services after those services have been

[8] The language of the F&D apparently caused concern for the GAO representative handling GIV's bid protests, for upon receipt of the F&D, Paul Wengert, GAO Senior Attorney, faxed to counsel for CDC a copy of an April 9, 2004 letter from GAO General Counsel Anthony Gamboa to then-Secretary of Health and Human Services Tommy Thompson, advising the head of CDC's parent agency that CICA provided different legal standards for overriding a stay depending on whether the stay was issued before or after the contract was awarded. *See* Ex. A to Lorber Decl. In that letter, Mr. Gamboa concluded that because the agency had applied the "best interests of the United States" standard instead of the "urgent and compelling circumstances" standard, two pre-award GAO protesters had been denied the "opportunity of meaningful relief." *Id.*

> denied. Immunization coverage levels could drop to the point where the U.S. could face outbreaks of vaccine-preventable diseases.

*Id.* According to CDC, a "disruption" in the distribution of vaccine would occur as a result of "slippage" in the transitioning to the new centralized distribution system. *Id.* In particular, CDC pointed to the November 30, 2006 expiration of New Jersey's existing distribution contract and the March 31, 2007 expiration of a number of other distribution contracts. *See* F&D ¶ 7. Upon further examination, however, neither justification has any merit whatsoever.

This Court's recent decision in *Advanced Systems Development, Inc. v. United States*, 72 Fed. Cl. 25 (2006), leads to that conclusion. In *Advanced Systems*, this Court found that an agency could not meet its burden under the less restrictive "best interests" standard applicable in post-award override cases. The Washington Headquarters Services ("WHS"), a field activity of the Department of Defense, sought to consolidate its many contracts for information technology ("IT") services into one integrated system. 72 Fed. Cl. at 27. Advanced Systems Development, Inc. ("ASD"), an incumbent contractor, submitted a proposal along with four other contractors. *Id.* WHS subsequently awarded the contract to an ASD competitor, KENROB. *Id.* ASD filed a protest with GAO soon after the award, and upon GAO's notification to WHS, performance on the contract was stayed. *Id.* However, in overriding the stay, WHS argued that such issues as system efficiency, cost effectiveness and job security for contractor personnel justified its decision. *Id.* at 28.

In finding these arguments "legally insufficient" and ordering that the stay be reinstituted, this Court explained:

> [WHS's decision] explicitly proclaims that the challenged acquisition should proceed because "the current fragmentation of IT support combines high costs with low performance and represents a poor use of federal funds." In other words, the new contract is cheaper and better than the old contract. *The*

> *allegation that the new contract is better than the old one in terms of cost or performance is not enough to justify a best interests determination. Indeed, it will almost always be the expectation that the new contract will be an improvement over the old. To allow a best interests determination to rest on such a common ground would permit the override exception to swallow the Congressionally mandated rule that stays be automatic.*
>
> We acknowledge that the WHS made a persuasive case for the advantages of the new contract. But no matter how many manifestations of this assessment appear in the override, it is still only one assessment. This lone justification cannot stand on its own unless we are to ignore CICA's mandate. . . . There must be some rationale—above and beyond the principle [sic] aim originally sought when WHS decided to engage bidders in the competitive procurement—that absolves the agency of its obligation to await the GAO's recommendation.
>
> . . .
>
> In this case, the WHS offers only that the stay will not allow the agency to eliminate the needless and expensive duplication of IT systems as quickly as it wishes. The D & F cites no specialized and unique consequences of delay beyond this generic desire to get on with the procurement. Although WHS points to the potential frustration of "efforts to provide a smooth transition to a new service provider," the agency does not back the claim.

*Id.* at 31 (citations omitted) (emphasis added).

The Court in *Advanced Systems* also found that the agency's interests in avoiding an unscheduled loss of service did not justify its decision to override the CICA stay. *Id.* at 32. The Court stated:

> The WHS fails to explain adequately *why* it cannot obtain the IT services from sources other then [sic] KENROB during the period of delay. For instance, the incumbent contracts apparently could be extended. However, the WHS chooses not to extend them based solely on their assurance that the old contracts are not as efficient as the new consolidated contract.
>
> Ultimately, each of the proffered reasons for overriding the stay can be traced back to the desire to embark on the newer, better contract. It is the *preferred* approach, certainly, but there has been no showing that it is a *necessary* approach.

*Id.* (citation omitted). In ordering that the CICA stay be reinstituted, this Court concluded that the agency's "shortsighted approach [was] both arbitrary and capricious, and contrary to the objectives of CICA's stay provisions." *Id.*

CDC's determination in the instant matter fares no better than the agency determination at issue in *Advanced Systems.*[9]

### *1. The New Jersey Contract*

CDC's stated concern with respect to transitioning the New Jersey contract to the consolidated system may appear superficially appealing, if it were true. GAO's decision is expected November 16, 2006. New Jersey's contract expires November 30, 2006. The F&D creates the distinct impression that vaccine distribution in the state of New Jersey will be jeopardized unless McKesson is allowed to proceed. The pre-award CICA stay must therefore be overridden, according to CDC. That conclusion is flawed because CDC knew that any interruption had been avoided some five months earlier.

In a March 30, 2006 e-mail to GIV's Senior Manager for Government Contracting, CDC, itself, asked for, and received, GIV's agreement to provide vaccines to the state of New Jersey after its contract expired on November 30, 2006. The CDC official wrote:

> Would it be a major problem for you [GIV] if we [CDC] transitioned New Jersey to the New York State Multi-State contract [for which GIV was the distributor]?

---

[9] This Court's recent decision in *CIGNA* is also instructive to the matter at hand. *See* 70 Fed. Cl. 100. There, the Court found that an agency's decision to override a CICA stay was arbitrary and capricious because the agency's determination was contradicted by evidence in the record. More specifically, the delay-based justification provided by the agency was inconsistent with the agency's testimony before Congress. *See id.* at 110-12. In addition, the override determination failed to consider several relevant factors, including the cost of termination if GAO ruled in favor of the disappointed bidder. *See id.* at 112-13.

> It would most likely be sometime this Summer and go to March 2007 at the expiration of the [New York Multi-State] contract.

Ex. A to Puckett Decl. The very next day, GIV's Senior Manager for Government Contracting gladly responded that doing so would not present a problem to GIV. *Id.*

Consequently, when CDC represented in the F&D that a potential interruption of vaccine service to New Jersey was a "unique and compelling circumstance" justifying overriding the CICA stay, it knew that based on its own actions that the interruption of the New Jersey service had been avoided in March 2006. Clearly it was not an "urgent and compelling circumstance[]" justifying CDC's decision to override the pre-award stay mandated by statute.

### *2. The New York Multi-State Contract*

The pre-award stay presented even less of a threat to vaccine distribution under the New York Multi-State Contract set to expire on March 31, 2007. *See* Puckett Decl. ¶¶ 20-21. CDC's F&D provides no evidence to support the agency's claim that delaying the award of the contract pending resolution of GIV's GAO protest would result in states "not having vaccine distribution services." F&D ¶ 7(B). CDC also fails to explain how waiting for a GAO decision, which will be issued four months before the New York contract expires, will have a substantive impact on transitioning the New York contract. This is particularly true in light of the fact that in August 2006 GIV had agreed with Mary Schneider of the Office of General Services of the State of New York to extend the New York Multi-State contract beyond its March 2007 expiration date. Puckett Decl. ¶ 20.

### *3. Other State Contracts*

CDC's stated concern with respect to transitioning other state contracts also fails to justify the agency's decision to circumvent the Congressionally mandated process for

determining GAO bid protests. For example, as grounds for its assertion that an "urgent public health requirement" meant it had to award the contract to McKesson no later than September 8, 2006, CDC cited distribution contracts with a group of states that included California and Texas that were set to "expire prior to March 31, 2007." *See* F&D ¶ 7(A). CDC neglected to mention that GIV currently provides vaccine distribution services under contracts with both states, *see* Puckett Decl. ¶ 4, and, as a result, could easily extend performance to avoid any disruption in service.

Where, as here, an agency overrides CICA stays without explaining adequately why it cannot obtain the services from sources other than by overriding the stay, this Court has repeatedly held such overrides are arbitrary. Here, as the Court suggested to the agency in *Advanced Systems*, "the incumbent contracts apparently could be extended." 72 Fed. Cl. at 32. Quite simply, the evidence before the agency overwhelmingly shows that no such disruption will occur should CDC wait the few weeks until GAO completes its process. Accordingly, CDC's decision to override the pre-award CICA stay was arbitrary and capricious.

### C. CDC's Determination Failed To Include A Finding That Performance By McKesson Was Urgent And Compelling

CDC proffered no reason in its F&D as to why it was essential that *McKesson* perform the obligations of the contract during the pendency of GIV's bid protests. In order to override a pre-award stay, CICA requires an agency to determine that performance by the "proposed contractor presents urgent and compelling circumstances[,] not merely that performance of the contract itself is urgent and compelling[.]" *DTH Mgmt. Group v. Kelso*, 844 F. Supp. 251, 256 (E.D.N.C. 1993); *see also PGBA*, 57 Fed. Cl. at 63 (citing *DTH Management Group* with approval).

For example, in *DTH Management Group*, the court ruled invalid an agency's decision to override a pre-award CICA stay, explaining: "Defendant's findings raise serious questions because they completely ignore the availability of plaintiff to continue the services in the interim while plaintiff's protest is pending before the GAO. The findings give no explanation about why performance of the contract by [the contract awardee] presents urging and compelling circumstances, but merely that the performance of the contract by some entity is allegedly urgent and compelling." 844 F. Supp. at 256. The court explained that absent a justification in favor of a particular contractor, "performance of almost any government contract could conceivably be deemed urgent and compelling[.]" *Id.*

Likewise, CDC's F&D provided no reason, let alone an "urgent and compelling" reason, as to why McKesson had to begin performance under the contract pending resolution of GIV's bid protests. Moreover, CDC consciously disregarded the fact that GIV, not McKesson, was and is uniquely situated to provide services under the VFC program, which it has served for many years. Thus, to allow CDC to find "urgent and compelling circumstances" against this factual backdrop would eviscerate the purpose and effect of CICA's pre-award stay provision.[10]

[10] While not evidence of agency bad faith per se, the timing of CDC's decision to override the pre-award stay is nonetheless suspicious. Specifically, it was only *after* GIV filed its supplemental GAO protest, in which the company alleged that two technical panel members were impermissibly pressured to change GIV's technical scores, that CDC determined that "[a]ny delay in the award of the contract [would] have a negative public health impact." F&D ¶ 7.

### D. CDC's Claim That The New Contract Will Save Money Cannot Justify Overriding A Pre-Award Stay Under CICA

CDC also attempted to justify its decision to override the pre-award stay as a cost-saving measure that would enhance the performance of America's vaccine distribution system. According to CDC:

> Delaying transition to a new distributor delays any potential financial savings that may be realized, including replacement insurance for inventoried doses. The federal centralized vaccine distribution contract award will save CDC approximately $6 million on an *annual* basis. Delaying transition postpones non-financial benefits of system [sic] – including improved visibility of inventory and shipped doses which are critical items during vaccine shortages.

F&D ¶ 7(D) (emphasis added).

*Advanced Systems* and prior cases of this Court clearly establish that cost savings are a legally insufficient rationale to support the override of a CICA stay. *See* 72 Fed. Cl. at 31; *see also CIGNA*, 70 Fed. Cl. at 113. As this Court recently noted in *Advanced Systems*, the mere fact that a new contract is better than its predecessor in terms of cost or performance is not enough to justify overriding a stay imposed by CICA. *See* 72 Fed. Cl. at 31. If it were, the CICA stay provisions could be overridden in every instance. Thus, CDC's use of hoped-for financial savings and efficiencies as a basis for finding "urgent and compelling circumstances" fails as a matter of law.[11]

---

[11] Paragraph 3 of the F&D contains what purports to be a comparison of the estimated contract amounts based on CDC's review of the GIV and McKesson bids. Not only is such pricing information extremely prejudicial and completely irrelevant to the question of whether "urgent and compelling circumstances which significantly affect interests of the United States will not permit waiting for the decision of the [GAO]," *cf. Advanced Systems*, 72 Fed. Cl. at 31; *PGBA*, 57 Fed. Cl. at 662, according to the attached declaration of GIV's valuation expert, the F&D materially overstates what the cost of the contract would be under GIV's bid, Declaration of Howard N. Kenyon Jr. ¶ 5 (Sept. 29, 2006). A copy of Mr. Kenyon's declaration is attached as Exhibit 3.

### E. CDC's Determination Failed To Consider What Would Happen If GIV Were To Win Its Bid Protest

This Court has consistently faulted agencies for failing to consider the ramifications of overriding a CICA stay in the event the disappointed bidder wins its bid protest. *See, e.g.*, *Advanced Systems*, 72 Fed. Cl. at 32; *CIGNA*, 70 Fed. Cl. at 112; *PGBA*, 57 Fed. Cl. at 662. Most recently, the Court in *Automation Technologies* held that an agency's override of a CICA stay was invalid because the agency failed to consider the ramifications of its decision to go ahead with contract performance in the event the agency subsequently lost the bidder's GAO protest. *See* 2006 WL 2720642, at *6. No discussion of this factor exists in the F&D. CDC failed to consider this important consideration. Its decision to override the pre-award stay, therefore, is arbitrary and capricious. *See State Farm*, 463 U.S. at 43 (holding that an agency's failure to consider an important aspect of the problem renders agency action arbitrary and capricious).

## II. GIV IS ENTITLED TO PRELIMINARY INJUNCTIVE RELIEF

Even if this Court were to find it necessary to address the traditional injunctive relief factors, GIV would still prevail in this action. GIV is entitled to preliminary injunctive relief because (1) it possesses a likelihood of success on the merits; (2) the harm to GIV outweighs the harm to CDC; (3) the public interest is served by enjoining CDC; and (4) GIV will suffer irreparable injury if CDC is not enjoined.

### A. GIV Is Likely To Succeed On The Merits Challenging CDC's Override Of The CICA Pre-Award Stay

CDC's decision to override the pre-award CICA stay was arbitrary and capricious on numerous independent grounds outlined above, thereby reflecting the fact that GIV will succeed on the merits of its complaint. For example, CDC's cost-saving justification fails as a matter of

law. The fact that a "new contract is better than the old one in terms of cost or performance is not enough to justify a "best interests" determination under § 3553(d)(3)(C)(i). *Advanced Systems*, 72 Fed. Cl. at 31. It is therefore logically impossible that such considerations could satisfy the more demanding "urgent and compelling circumstances" standard established by 31 U.S.C. § 3553(c)(2)(A). *Cf. Spherix*, 62 Fed. Cl. at 507 (recognizing that override of pre-award stay is held to higher standard).

Likewise, CDC failed to consider an important aspect of the issues facing the agency: namely, what would happen if GIV were to win its pending bid protest. *See Automation Technologies*, 2006 WL 2720642, at *6; *Advanced Systems*, 72 Fed. Cl. at 32; *CIGNA*, 70 Fed. Cl. at 112; *PGBA*, 57 Fed. Cl. at 662. CDC also offered mere naked assertions of possible interruptions of vaccine service, all of which are contradicted by clear evidence in the record. For example, in the case of New Jersey's vaccine distribution contract, CDC failed to address the fact that GIV, at CDC's request, had agreed with the state to maintain that state's vaccine supply should its November 30, 2006 contract expire without a new federal contract being awarded. As for the New York contract, GIV again had agreed to extend the contract to ensure no interruption, a fact CDC either ignored in its F&D or of which it was unaware. Neither of those latter possibilities reflect favorably on CDC. Additionally, CDC did not explain what, if any, harm actually exists in keeping the CICA stay in place given that GAO will issue its decision more than four months before the New York contract will expire, especially where the terms of

the RFP require the successful bidder to begin operations within 30 days.[12] GIV therefore has a substantial likelihood of success on the merits of its complaint.

### B. GIV Will Suffer Irreparable Injury If The Court Does Not Grant The Requested Relief

When assessing irreparable injury, "'the relevant inquiry . . . is whether [the] plaintiff has an adequate remedy in the absence of an injunction.'" *PGBA*, 57 Fed. Cl. at 664 (quoting *Magellan Corp. v. United States*, 27 Fed. Cl. 446, 448 (1993)). In the context of deciding a judicial challenge to an agency's decision to override a CICA stay, this Court has repeatedly recognized that a lost opportunity to compete constitutes irreparable harm. *See id.* (collecting cases). For example, in *PGBA*, this Court acknowledged that Congress enacted CICA "on the [very] premise that the failure of an agency to stay performance could result in a competitive disadvantage that might not be remedied, causing a contractor to lose an important business opportunity." *Id.*; *see also CIGNA*, 70 Fed. Cl. at 102 n.5 ("Absent the stay, GAO's protest process—an enforcement mechanism for competition in government procurement—can be rendered illusory or 'toothless' if agencies cavalierly invoke best interest overrides and 'extremely tight' schedules just to get on with their procurements.").

The overarching goal of a CICA stay is to preserve competition in contracting and ensure a fair and effective process before the GAO. *PGBA*, 57 Fed. Cl. at 660; *see also Advanced Systems*, 72 Fed. Cl. at 30-31 (discussing legislative objectives of CICA stay provisions); Gamboa Letter at 1 (recognizing that agency's inappropriate use of limited statutory authority to

[12] According to the RFP, the contract requires thirty-day arrangements for delivery. *See* RFP at 9. This means that upon CDC approval, the contractor can get begin implementation within thirty days, well in time for the March 31, 2007 deadline.

override pre-award CICA stay denied protesters the opportunity for meaningful relief). Because GIV will lose the opportunity to compete for the CDC contract absent injunctive relief, GIV will be irreparably harmed if CDC is allowed to override the automatic stay without a proper determination that "urgent and compelling circumstances" truly outweigh congressional policy in favor of preserving competition in government contracting. *See Advanced Systems*, 72 Fed. Cl. at 31; *PGBA*, 57 Fed. Cl. at 663. In addition, GIV will be irreparably harmed in that McKesson will have gained a competitive advantage through performance of the contract. *See CIGNA*, 70 Fed. Cl. at 101-02 (overturning agency decision to override CICA stay because agency failed to recognize the "competitive advantage that awardees could gain in the event of a recompetition").

### C. The Balance Of Hardships Favors Granting GIV The Requested Relief

CDC would suffer little to no harm were this Court to enjoin the agency and McKesson from beginning or continuing performance under the contract until GAO determines GIV's pending bid protest, which is set to occur less than two months from now. Moreover, only in an "exceptional case" will delay warrant the denial of injunctive relief. *PGBA*, 57 Fed. Cl. at 663. As set forth above, CDC's concern about delay affecting vaccine distribution is unsupported by the record. The F&D does not demonstrate that the matter before the Court is an exceptional case where such a short delay would justify denying GIV preliminary injunctive relief. As a result, the balance of hardships favors granting GIV the relief it seeks.

### D. It Is In The Public Interest To Grant GIV Injunctive Relief

This Court has recognized consistently that the paramount "public interest in honest, open, and fair competition in the procurement process is compromised whenever an agency abuses its discretion in evaluating a contractor's bid." *PGBA*, 57 Fed. Cl. at 663; *see also Spherix*, 62 Fed. Cl. at 507. Accordingly, it has not hesitated to declare invalid an agency's

override of the Congressionally mandated CICA stay provisions where it determines the agency acted without a sufficient legal rationale. This is such a case. In many ways, it parallels the *PGBA* case.

In *PGBA*, a federal agency solicited bids to consolidate the processing of claims under TRICARE, which is the Department of Defense's health care program for active duty and retired uniformed service members and their families. *See id.* at 656. After the contract was awarded, an unsuccessful bidder filed a protest with GAO thereby triggering the post-award stay provisions under CICA. *See id.* The agency then decided to override the stay, claiming that waiting for GAO's decision would cause disruptions in service. *See id.* at 660-61.

The unsuccessful bidder filed suit in this Court and sought preliminary injunctive relief. *See id.* at 656. Finding the agency's disruption claim to be unfounded, the Court held that the public interest was served by enjoining the agency and reinstituting the stay, explaining:

> In the instant case, the public's interest likewise lies in preserving the integrity of the competitive process—such, indeed, clearly was Congress' view in providing that, except in circumstances not yet demonstrated here, the automatic stay should prevail. In so holding, the court is mindful of the benefits that the new contracts might offer to TRICARE beneficiaries. But, those same beneficiaries, as well as the public at large, also have a long-term interest in ensuring that the new contract represents the best overall value to the government. Given the fact that there is no real indication that reinstituting the stay will impair services to a significant extent, the court believes that these long-term interests are paramount here and are best served by issuing the proposed injunction.

*Id.* at 663.

Here the gravamen of GIV's supplemental protest is that improper pressure was exerted on members of the technical evaluation panel to alter their evaluation of one of GIV's competitors, which prejudiced consideration of GIV's bid. Such action, if allowed to be demonstrated during the GAO bid protest resolution process, strikes at the heart of the public

interest in honest and fair competition. Allowing an agency to override the CICA stay where such allegations exist and adequate support for CDC's contention that reinstituting the stay to wait for GAO's November 16, 2006 decision will impair the distribution of vaccine does not exist, is clearly contrary to the public interest. Just as in *PGBA*, here the public's interest in ensuring that the new contract represents the best overall value to the government is best served by granting GIV the injunctive relief it seeks. In so ruling, this Court would also vindicate the public's interest in having its government conduct fair procurement procedures and to give honest and fair consideration to all bids, which is an interest Congress sought to protect by enacting CICA's stay provisions. *See Spherix*, 62 Fed. Cl. at 507.

## CONCLUSION

Based on the foregoing, GIV respectfully requests that the Court issue an order declaring invalid CDC's decision to overrule the pre-award CICA stay. Alternatively, GIV asks that the Court issue an order enjoining CDC and McKesson from beginning or continuing performance under the contract until GAO resolves GIV's pending bid protest. In accordance with Rule 7(b)(1) of the United States Court of Federal Claims, proposed orders granting either form of relief are attached hereto as Exhibit 5 and 6, respectively.

Dated: October 2, 2006

Respectfully submitted,

By: ______________________

Mark J. Biros*
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue, NW
Suite 400 South
Washington, DC 20004-2533
202.416.6800
202.416.6899 (fax)
mbiros@proskauer.com

*Attorney of Record for Plaintiff General Injectables & Vaccines, Inc.*

*Of counsel:*

Lawrence Z. Lorber
James F. Segroves
Meredith C. Bailey
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue, NW
Suite 400 South
Washington, DC 20004-2533
202.416.6800
202.416.6899 (fax)

Gilbert J. Ginsburg
LAW OFFICES OF
GILBERT J. GINSBURG
1250 24th Street, NW
Suite 350
Washington, DC 20037
202.776.7772
202.776.7773 (fax)

* Application for admission to be filed in accordance with appendix C, paragraph 25 of the Rules of the United States Court of Federal Claims.

**CERTIFICATE OF SERVICE**

I hereby certify that on this second day of October, 2006, I did cause a true and correct copy of Plaintiff's Complaint for Declaratory and Injunctive Relief, RCFC 7.1 Disclosure Statement, the instant motion and memorandum of points and authorities in support thereof, as well as all exhibits thereto, to be served via facsimile on the following:

Delisa M. Sanchez, Esq.
Commercial Litigation Branch
DEPARTMENT OF JUSTICE
1100 L Street, NW, Room 7014
Washington, DC 20530
202.616.0337
202.305.7643 (fax)

*Attorney for Defendant*
*United States of America*

Elise Harris, Esq.
Assistant Regional Counsel
Office of the General Counsel, Region IV
DEPARTMENT OF HEALTH
& HUMAN SERVICES
61 Forsyth Street, SW, Suite 5M60
Atlanta, GA 30303-8909
404.568.7819
404.562.7855 (fax)

*Attorney for Contracting Agency*
*Centers for Disease Control and Prevention*

David R. Hazelton, Esq.
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
202.637.2254
202.637.2201 (fax)

*Attorney for Contract Awardee*
*McKesson Specialty Distribution, LLC*

Mark J. Biros
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue, NW
Suite 400 South
Washington, DC 20004-2533
202.416.6800
202.416.6899 (fax)

*Attorney of Record for Plaintiff*
*General Injectables & Vaccines, Inc.*