**EXHIBIT 1**

**Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction,**
***General Injectables & Vaccines, Inc. v. United States***

**Declaration of Tracy B. Puckett**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | |
|---|---|
| GENERAL INJECTABLES & VACCINES, INC., Plaintiff, | |
| v. | No. |
| UNITED STATES OF AMERICA, Defendant. | |

**DECLARATION OF TRACY B. PUCKETT**

I, TRACY B. PUCKETT, declare and say upon personal knowledge as follows:

1. I am the Senior Manager for Government Contracting for General Injectables & Vaccines, Inc. ("GIV"). I have held that position for two years and I have approximately fifteen years of contracting experience. I have been employed with GIV since 1991, and I have been the key contact person for the Vaccines For Children ("VFC") program at GIV since 1995.

2. GIV is a licensed wholesale distributor of pharmaceuticals and medical supplies. GIV is a Virginia corporation with its principal place of business at 80 Summit View Lane, Bastian, Virginia 24314.

***GIV's Participation in the Vaccines for Children Program***

3. GIV has been a long-standing participant in the VFC program and has distributed publicly purchased vaccines for use by participating health care providers under contracts in up to twenty-eight states for over eleven years.

4. For example, GIV currently maintains contracts with the following states/projects: Arizona, California, Colorado, Connecticut, Hawaii, Idaho, Indiana, Kansas, Kentucky, King

County (Washington), Maine, Maryland, Minnesota, Missouri, Nebraska, Nevada, New York, New York City, North Carolina, Oklahoma, Oregon, Pennsylvania, Philadelphia, Tennessee, Texas, Utah, Virginia, and Wyoming.

5. GIV's record of service has been unblemished and exemplary throughout its participation in the VFC program. For example, GIV has never been cited for a deficiency after review by the Centers for Disease Control and Prevention ("CDC") or participating state health departments during site inspections and/or audits.

6. Until the award of the contract to McKesson Specialty Distribution, LLC ("McKesson"), GIV was one of only two distributors that held contracts to provide vaccine distribution services to state and municipal health departments under the VFC program. The other distributor was Bellco Drug Corporation, which has since expressed its intention to exit the VFC program.

7. GIV has provided vaccine distribution services to almost ninety-three percent of the states/projects that use a third-party distributor. Thirty of the sixty-four projects use a third-party distributor to provide vaccine distribution.

8. As the primary provider of vaccine distribution services to states/projects that use a third-party distributor, GIV currently ships tens of millions of doses of vaccine per year to VFC participants. In 2004, GIV distributed approximately twenty-eight million doses of vaccine. In 2005, GIV distributed approximately thirty-two million doses of vaccine. To date, GIV has shipped approximately twenty-six million doses of vaccine in 2006.

### *GIV's History of Cooperation with CDC*

9. In 2004, CDC determined that it would be more efficient to consolidate the vaccine distribution services provided under separate state contracts into one integrated system.

10. CDC relied on GIV to provide information in preparing a procurement that would achieve this consolidation.

11. For example, GIV provided CDC with its "Detailed Shipment Analysis" for all shipments to VFC providers to ensure that CDC could provide potential bidders with accurate estimates for vaccine shipment sizes and number of doses under the consolidated contract. Organized by state/project, this analysis included the date of order, provider address and identification number, description of product shipped, number of orders and number of doses shipped per order for every VFC participant who was shipped vaccine by GIV.

*GIV's Offer and Bid Protest*

12. GIV submitted a proposal in response to the CDC Solicitation No. 2006-N-08248 ("RFP") on June 6, 2006.

13. GIV's integrated proposal was supposed to include: (1) a Systems Security Plan to protect private health information; (2) technical and business proposal; (3) oral presentation; (4) final proposal revisions; (5) past performance; and (6) site visits by the CDC.

14. As required by the RFP, GIV included material cost estimates pertaining to the distribution of vaccine as well as vaccine stockpiling costs.

15. On or about July 18, 2006, CDC informed GIV both orally and in writing that the company had been eliminated from the "competitive range" of qualified offers and would not be considered for the centralized vaccine distribution contract.

16. CDC stated that while GIV's proposal was determined to be technically acceptable based on the evaluation criteria established in the RFP, the level of cost proposed resulted in GIV's exclusion from the competitive range.

***Negotiations with the States of New Jersey and New York***

17. GIV was asked by CDC on March 30, 2006, if New Jersey could be transitioned to the New York Multi-State distribution contract, which GIV services. Attached hereto as Exhibit A is a true and correct copy of this e-mail exchange between CDC and GIV.

18. On March 31, 2006, GIV agreed via e-mail to transition the New Jersey contract to the New York Multi-State distribution contract, which GIV services. *See id.*

19. Between May and September 2006, I had numerous phone conversations and e-mail exchanges with participants in the state of New Jersey regarding the transfer of their VFC inventory, pricing per dose, preparation and submission of contract forms and final date of transition.

20. On August 3, 2006, I received a telephone call from Mary Schneider of the Office of General Services of the State of New York. She requested that GIV consider extending the New York Multi-State contract beyond its March 31, 2007 expiration date. I telephoned Ms. Schneider several days later to express agreement on behalf of GIV to extend the contract.

21. On or about August 16, 2006, I telephoned Mr. Jack Nemecek, CDC Public Health Analyst, and told him that GIV was working with New Jersey to incorporate its contract into the New York Multi-State contract.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on September 28th, 2006

Tracy B. Puckett

Tracy B. Puckett

**EXHIBIT 1.A**

**Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction,**
***General Injectables & Vaccines, Inc. v. United States***

**Declaration of Tracy B. Puckett**

**Tracy Puckett**

**From:** Nemecek, Jack [jkn6@cdc.gov]
**Sent:** Friday, March 31, 2006 9:31 AM
**To:** Tracy Puckett
**Subject:** RE: New Jersey

Thank you Tracy.

Jack Nemecek, MBA
Public Health Advisor, Program Operations Branch
Immunization Services Division
Centers for Disease Control and Prevention
U.S. Mail: 1600 Clifton Road, E-52 Atlanta, GA 30329
FedEx: 12 Corporate Drive, Atlanta, GA 30329

Email: jkn6@cdc.gov
Office: 404-639-8219
Cell: 770-823-8850
Fax: 404-639-8615

Visit us at: www.cdc.gov/nip

**From:** Tracy Puckett [mailto:tracy.puckett@giv.com]
**Sent:** Friday, March 31, 2006 9:24 AM
**To:** Nemecek, Jack
**Subject:** RE: New Jersey

No, it would not be a problem, but just give us as much notice as possible since New Jersey will be a bigger state.

**From:** Nemecek, Jack [mailto:jkn6@cdc.gov]
**Sent:** Thursday, March 30, 2006 2:57 PM
**To:** tpuckett@giv.com
**Subject:** New Jersey

Hi Tracy,

Would it be a major problem for you if we transitioned New Jersey to the New York State Multi-State contract? It would most likely be sometime this Summer and go to March 2007 at the expiration of the contract.

Jack Nemecek, MBA

Public Health Advisor, Program Operations Branch

Immunization Services Division
Centers for Disease Control and Prevention
U.S. Mail: 1600 Clifton Road, E-52 Atlanta, GA 30329
FedEx: 12 Corporate Drive, Atlanta, GA 30329

Email: jkn6@cdc.gov

Office: 404-639-8219

Cell: 770-823-8850

Fax: 404-639-8615

Visit us at: www.cdc.gov/nip

**EXHIBIT 2**

**Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction,**
***General Injectables & Vaccines, Inc. v. United States***

**Declaration of Lawrence Z. Lorber**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | |
|---|---|
| GENERAL INJECTABLES & VACCINES, INC., Plaintiff, | |
| v. | No. |
| UNITED STATES OF AMERICA, Defendant. | |

**DECLARATION OF LAWRENCE Z. LORBER**

I, LAWRENCE Z. LORBER, declare and say upon personal knowledge as follows:

1. I am a partner in the law firm of Proskauer Rose LLP, which serves as counsel to General Injectables & Vaccines, Inc. ("GIV") in the above-titled action. My office address is 1001 Pennsylvania Avenue, NW, Suite 400 South, Washington, DC 20004. My office telephone number is (202) 416-6891 and my e-mail address is llorber@proskauer.com.

2. On or about July 18, 2006, I was informed by GIV that the company had been eliminated from the "competitive range" of qualified offers for the Centers for Disease Control and Prevention's ("CDC's") centralized vaccine contract.

3. On July 20, 2006, GIV requested a pre-contract-award debriefing by CDC pursuant to FAR 15.505.

4. On July 27, 2006, CDC responded to GIV's debriefing request in writing. The debriefing letter stated that GIV's technical proposals, business proposals and oral presentations were all acceptable. However, CDC reiterated that the level of cost proposed by GIV resulted in the company being excluded from the competitive range. The debriefing document stated that

CDC made an "affirmative decision that the remaining offeror(s) in the competitive range could perform the contract at the stated price."

5. GIV filed a timely bid protest with the United States Government Accountability Office ("GAO") on August 7, 2006, based on its exclusion from the competitive range for the CDC's centralized vaccine distribution program.

6. The timely filing of GIV's bid protest effectively stayed the award of the contract in accordance with the Competition in Contracting Act ("CICA"), 31 U.S.C. § 3553(c)(2).

7. GIV filed a timely supplemental protest on August 25, 2006, alleging that two technical panel members were impermissibly pressured to change GIV's technical scores.

8. On September 12, 2006, CDC informed GIV that, despite the company's pending bid protests, CDC had awarded the contract to McKesson Specialty Distribution, LLC ("McKesson").

9. The contract award should have been preceded by a Findings and Determination ("F&D") letter from CDC. Neither GAO nor GIV received the CDC's F&D explaining the reasons for overriding the statutory stay prior to the award of the contract to McKesson.

10. Tinker Short of GIV forwarded the CDC's notification of contract award to Proskauer counsel as an e-mail attachment on September 12, 2006.

11. On the morning of September 13, 2006, I telephoned Mr. Paul N. Wengert, attorney for the GAO, to inquire about CDC's decision to override the statutory stay and award the contract to McKesson in light of GIV's pending bid protests.

12. During that conversation, Mr. Wengert informed me that CDC authorized the awarding of the contract to McKesson before notifying GAO of the agency's decision to override the pre-award stay.

13. On September 13, 2006, I received a facsimile transmission from Mr. Wengert, which stated that GAO had received a "two-page fax from HHS regarding notification of award of a contract." Attached hereto as Exhibit A is a true and correct copy of this facsimile transmission from Mr. Wengert.

14. Mr. Gilbert J. Ginsburg, Esq., co-counsel for GIV, and Ms. Elise Harris, Esq., Assistant Regional Counsel, Department of Health and Human Services, also received copies of Mr. Wengert's facsimile transmission dated September 13, 2006.

15. Accompanying Mr. Wengert's September 13, 2006 facsimile transmission was a copy of an April 9, 2004 letter from GAO General Counsel Anthony Gamboa to then-Secretary of Health and Human Services Tommy Thompson, advising the head of CDC's parent agency that CICA provided different legal standards for overriding a stay depending on whether the stay was issued before or after the contract was awarded. In that letter, Mr. Gamboa concluded that because the agency had applied the "best interests of the United States" standard instead of the "urgent and compelling circumstances" standard, two pre-award GAO protesters had been denied the "opportunity of meaningful relief." *See id.* at 3.

16. On the same morning of September 13, 2006, I received a facsimile transmission from CDC counsel that contained CDC's F&D that allegedly preceded CDC's decision to award the contract to McKesson. Upon preliminary review by GIV's counsel, the F&D appeared to be legally insufficient because it was not signed by the agency's head of procurement activity, as required by CICA. *See* 31 U.S.C. § 3553(c)(1). Attached hereto as Exhibit B is a true and correct copy of this facsimile transmission from CDC counsel.

17. As part of a September 13, 2006 conference call with counsel for GIV and counsel for CDC, Mr. Wengert informed me that GAO would render a decision on GIV's bid protest and supplemental bid protest on November 16, 2006.

18. Later in the morning of September 13, 2006, after the conference call between GAO, counsel for GIV and counsel for CDC, a second facsimile transmission from CDC counsel was received that contained CDC's F&D, this time containing a signature page bearing the signature of CDC's procurement activity. Attached hereto as Exhibit C is a true and correct copy of this second facsimile transmission from CDC counsel.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on October 2, 2006

Lawrence Z. Lorber

**EXHIBIT 2.A**

**Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction,**
***General Injectables & Vaccines, Inc. v. United States***

**Declaration of Lawrence Z. Lorber**

GAO
Accountability * Integrity * Reliability

United States Government Accountability Office
Washington, DC 20548

# Facsimile Transmission Sheet

**Date:** September 13, 2006

Number of pages, including this cover sheet: 3

If transmission problems occur, please call 202-512-4788.
Our fax number is 202-512-9749.

**Re:** B-298590; B-298590.2

Protest of General Injectables & Vaccines, Inc.

**From:** Paul N. Wengert, Attorney

| Name | Firm/Agency | Phone | Fax |
|---|---|---|---|
| Lawrence Z. Lorber, Esq. | Proskauer Rose LLP | 202-416-6891 | 202-416-6899 |
| Gilbert J. Ginsburg, Esq. | Law Office of Gilbert J. Ginsburg | 202-776-7772 | 202-776-7773 |
| Elise Harris, Esq. | Health & Human Services | 404-562-7819 | 404-562-7855 |

**Comments:**

Our Office received a 2-page fax from HHS regarding notification of award of a contract. It is not clear whether this submission was provided to counsel for the protester.

Our Office is seeking to schedule a conference call with the parties promptly today.

Accompanying this transmission is a copy of a letter dated April 9, 2004 send to HHS. We wanted both parties to be aware of this letter prior to holding a conference call.

GAO
Accountability * Integrity * Reliability
United States General Accounting Office
Washington, DC 20548

B-293541

April 9, 2004

The Honorable Tommy G. Thompson
The Secretary of Health and Human Services

Dear Mr. Secretary:

This letter is to bring to your attention certain matters we have encountered during our consideration of recent bid protests associated with your agency's use of its authority to proceed with the award of a contract in the face of a protest.

Under the Competition in Contracting Act of 1984 (CICA), an agency is prohibited from proceeding with award--or if award has been made, from proceeding with performance--without making certain written findings, and advising our Office of those findings. 31 U.S.C. §§ 3553(c) (2000) (protests before award), 3553(d)(3) (protests after award). CICA requires different findings depending upon whether award has, or has not, been made. In two recent bid protest cases, HHS proceeded with award using findings not authorized by CICA under the circumstances of the procurement.[1] In both cases, the inappropriate use of this limited statutory authority denied the protester the opportunity of meaningful relief.

When protests are filed before award, an agency may proceed with award only after a written finding by the head of the procuring activity that "urgent and compelling circumstances which significantly affect interests of the United States will not permit waiting for [GAO's] decision." 31 U.S.C. § 3553(c)(2)(A). In contrast, when protests are filed after award, an agency may proceed with performance after making one of two possible written findings: (1) "performance of the contract is in the best interests of the United States"; or (2) "urgent and compelling circumstances that significantly affect interests of the United States will not permit waiting for [GAO's] decision." 31 U.S.C. § 3553(d)(3)(C). Under CICA, when an agency proceeds with performance in the face of a post-award protest on a "best interests" basis, our Office is required to recommend relief without regard to cost, or disruption from terminating, recompeting, or reawarding the contract. 31 U.S.C. § 3554(b)(2).

---

[1] These protests were both brought by a company named Information Ventures, Inc., and our decisions in B-293518, B-293518.2, and in B-293541, were issued March 29, and April 9, 2004, respectively. Copies of the decisions are attached.

Both of these recent protests, involving procurements conducted by separate divisions of HHS–i.e., the National Council on Aging, and the National Institutes of Health–were filed with our Office prior to award. In both cases, there is no dispute that HHS was aware of the protests, and in both cases, HHS proceeded with award on the basis that proceeding was in the best interests of the United States. As set forth above, CICA authorizes proceeding with award only upon a written finding of "urgent and compelling" circumstances. Thus, in both cases, HHS proceeded with award in a manner inconsistent with the requirements of the statute.

I bring these matters to your attention for such action as you deem appropriate. Please advise our Office of any actions HHS takes in response to this letter.

Sincerely yours,

Anthony H. Gamboa

Anthony H. Gamboa
General Counsel

Enclosures (2)

**EXHIBIT 2.B**

**Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction,**
***General Injectables & Vaccines, Inc. v. United States***

**Declaration of Lawrence Z. Lorber**

# FAX TRANSMISSION

DHHS/OFFICE OF THE GENERAL COUNSEL/REGION IV
Suite 5M60 - 61Forsyth st., s.w.
Atlanta, Georgia 30303
Telephone: (404) 562-7819
Fax: (404) 562-7855

| | | | |
|---|---|---|---|
| **FROM:** | Elise Harris | **DATE:** | September 13, 2006 |
| **TO:** | Mr. Lawrence Z. Lorber, Esq. | **FAX #:** | (202) 416-6899 |
| **PHONE:** | | | |
| **PAGES:** | 7, including cover sheet | | |
| **SUBJECT:** | B-298590; B298590-2 | | |

**COMMENTS:**

***IMPORTANT:*** This message is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination or copying of this information is strictly prohibited. If you receive this communication in error, please notify us immediately by telephone and destroy the original or return to us via regular mail. Thank you.

DEPARTMENT OF HEALTH AND HUMAN SERVICES

OFFICE OF THE GENERAL COUNSEL
REGION IV
61 FORSYTH STREET, S. W.
SUITE 5M60
ATLANTA, GA 30303-8909
Direct 404 562-7819
Fax 404 562-7855

September 13, 2006

Paul N. Wengert, Senior Attorney
United States Government Accountability Office
441 G Street, N.W.
Washington D.C. 20548

RE: Protest of General Injectables & Vaccines, Inc., B-298590; B298590.2

Dear Mr. Wengert:

In response to the voice mail and facsimile I received this morning I am sending a you the Findings and Determination that preceded the Award of contract in this case. I am available at any time for a conference call regarding this matter.

Respectfully submitted,

Elise Harris
Assistant Regional Counsel

cc: Mr. Lawrence Z. Lorber, Esq.

DEPARTMENT OF HEALTH & HUMAN SERVICES

Public Health Service
Centers for Disease Control
and Prevention (CDC)

**Memorandum**

Date. September 7, 2006

From: Head of Contracting Activity (HCA)
Procurement and Grants Office (PGO), CDC

Subject: Request for Authorization to Award Contract in Face of Protest
Solicitation No. 2006-N-08248, Centralized Vaccine Distribution

To: Marc R. Weisman, Deputy Assistant Secretary
Acquisition Management and Policy

In accordance with FAR Subpart 33.104(b)(1) and HHSAR Subpart 333.104(b)(1), approval is requested to make award to McKesson Specialty Distribution, LLC (McKesson) on the above referenced solicitation notwithstanding the protest submitted to the Government Accountability Office (GAO) by General Injectables & Vaccines, Inc. (GIV) on August 7, 2006 and supplemental protest submitted on August 25, 2006. The purpose of the requirement is to provide centralized receipt, storage, and distribution of licensed vaccines under federal contracts and non-federal contracts, as directed by the Government.

The attached Findings and Determination document specifies that it is in the best interest of the Government due to urgent and compelling circumstances to award this contract to McKesson, prior to disposition of the protest and supplemental by GAO. Also attached is a Statement of Facts document which summarizes the protest allegations and provides CDC's position.

Your earliest attention to approval of the attached Contracting Officer's Findings and Determination is requested as performance is slated to begin by September 8, 2006.

for Alan A. Kotch

Attachments

Copy: Doris Gibson, Department Protest Control Officer
William Ryan, Procurement and Grants Officer, Protest Control Officer

**Department of Health and Human Services**
**Centers for Disease Control & Prevention (CDC)**
**Findings and Determination**

**Authority to Award in Face of Protest Filed by General Injectables & Vaccines, Inc. (GIV)**
**General Accountability Office File No. B-298590; B-298590.2**

Pursuant to Federal Acquisition Regulation (FAR) Subpart 33.104(b)(1) and HHSAR Subpart 333.104(b)(1), the following findings and determination are provided to request authorization to proceed with contract award under a solicitation which is under protest to the General Accountability Office (GAO), based on urgent and compelling circumstances.

FINDINGS:

1. A protest before award under Solicitation No. 2006-N-08248, issued by the Centers for Disease Control & Prevention (CDC), was filed with the GAO on August 7, 2006 by GIV. A supplemental protest before award was filed on August 25, 2006 by GIV.

2. Solicitation No. 2006-N-08248 sought offers for the centralized receipt, storage and distribution of licensed vaccines under federal contracts and non-federal contracts, as directed by Government. The selection criteria notified potential offerors that technical merit and other non-cost factors would be of equal importance to cost/price. Further, the RFP informed all offerors that in evaluating proposals for award the Government would perform a "best value" analysis, making award(s) to the offeror(s) whose integrated proposal (Go/No-Go Requirement, technical and business proposal, oral presentation, final proposal revisions, past performance and site visits) represented the best overall value to the Government.

3. The proposal submitted by McKesson Specialty Distribution, LLC (McKesson) offers the best overall value to the Government. As indicated below, the estimated contract amount of McKesson's offer is $98,970,547.02, for a base period of three years and two 12-month option periods. The option periods will be exercised at the discretion of the Government.

| McKesson | Total Pricing |
|---|---|
| Base Yr 1 (East and West Regions) | 19,316,989.64 |
| Base Yr 2 (East and West Regions) | 19,316,989.64 |
| Base Yr 3 (East and West Regions) | 19,316,989.64 |
| Option Yr 1 (East and West Regions) | 20,457,289.05 |
| Option Yr 2 (East and West Regions) | 20,562,289.05 |
| **Total** | 98,970,547.02 |

The proposal submitted by GIV for the same base period and options is as follows:

| GIV | Total Pricing |
|---|---|
| Base Yr 1 (East and West Regions) | 51,035,518.00 |
| Base Yr 2 (East and West Regions) | 51,035,518.00 |
| Base Yr 3 (East and West Regions) | 51,035,518.00 |
| Option Yr 1 (East and West Regions) | 43,893,773.37 |
| Option Yr 2 (East and West Regions) | 44,640,276.40 |
| **Total** | 241,640,603.77 |

GIV's pricing is $142,670,056.75 more than McKesson's offer.

4 On July 18, 2006, GIV was informed both verbally and in writing of its elimination from the competitive range. While GIV's proposal was determined to be technically acceptable based on the evaluation criteria established in the solicitation, the level of cost proposed resulted in GIV's exclusion from the competitive range. On July 20, 2006 the Government received GIV's request for a preaward debriefing. CDC provided a written debriefing that complied with the FAR 15.505 (e) on July 27, 2006. Also, the CDC provided a response to GIV's written questions with regard to their preaward debriefing request on August 14, 2006.

5. Prior to award GIV filed a protest with the GAO. A copy of the protest was forwarded to the Contracting Officer on August 8, 2006. A supplemental protest before award was filed on August. 25, 2006.

6. The Federal Acquisition Regulations (FAR), Section 33.104(b)(1), entitled "A Protest before Award," states in part:

(1) When the agency has received notice from the GAO of a protest filed directly with the GAO, a contract may not be awarded unless authorized, in accordance with agency procedures, by the head of the contracting activity, on a nondelegable basis, upon a written finding that:

(a) Urgent and compelling circumstances which significantly affect the interest of the United States will not permit awaiting the decision of the GAO; and

(b) Award is likely to occur within 30 days of the written finding.

7. **The GAO has until November 16, 2006, to render a decision under the protest and until December 4, 2006 to render a decision under the supplemental protest. Urgent and compelling circumstances exist which will not permit awaiting the decision of GAO.** In 2004, CDC decided to outsource vaccine distribution for all public-sector purchased vaccine in the United States. During the past two years, CDC has worked extensively with its 64 immunization grantees to transition this critical function from existing State vaccine distribution contracts and State owned and operated vaccine distribution depots to a centralized vaccine distribution contract.

Any delay in the award of the contract will have a negative public health impact. Timely vaccine supply distribution is critical to maintaining immunization services throughout the country. Any disruption in vaccine supply distribution would impact the health of our nation's infants, children and adults. We experienced severe vaccine supply shortages several years ago which resulted in denying children life-saving vaccines. We learned through that experience that it is extremely challenging to recall children for immunization services after those services have been denied. Immunization coverage levels could drop to the point where the U.S. could face outbreaks of vaccine-preventable diseases.

A detailed grantee transition timeline has been developed in consultation with each immunization project. In addition, nearly all of the immunization grantees are in the process of developing detailed transition action plans for the imminent contract award. Any slippage in this schedule will negatively impact CDC's ability to provide pediatric and adult vaccines to more than 44,000 provider sites receiving vaccine through CDC's federal vaccine purchase contracts.

Detailed below are specific State examples that justifies the urgent public health requirement to award this centralized vaccine distribution contract by no later than September 8, 2006:

A. Multiple State Contracts with existing vaccine distributors expire prior to March 31, 2007 - 26 Grantees, distributing approximately 62% of the public doses in the U.S. (over 40 million doses per

year), have contracts with a vaccine distributor. All of these State contracts expire prior to March 31, 2007. Further delays in contract award cut into the implementation timing for transition - potentially putting over half of the program's vaccine distribution at risk. Any slippage in the federal contract award will result in these states not having vaccine distribution services. Texas and California are both in this category.

B. New York State Multi-state Distribution contract - This is a single contract with a vaccine distributor that currently services 14 grantees and represents over 20% of the nation's public vaccine distribution. It expires March 31, 2007 - with no additional extensions allowed. This contract is not currently in the process of being renegotiated, under the assumption that these services will be replaced by the federal contract. Any slippage in the federal contract award will result in other states, including New York, not having vaccine distribution services.

C. New Jersey Contract with a vaccine distributor -- expires November 30, 2006,- this is the last vaccine distribution contract held by Bellco, who is interested in exiting the business of vaccine distribution altogether. To date, Bellco has not been willing to extend its contract. The federal contract should have been awarded no later than August 31st in order to transition New Jersey onto the federal contract by November 30th. Any further slippage in the timeline jeopardizes New Jersey's ability to supply vaccine to their immunization providers. This will result in denied immunization services throughout the state starting December 1, 2006.

D. Delaying transition to a new distributor delays any potential financial savings that may be realized, including replacement insurance for inventoried doses. The federal centralized vaccine distribution contract award will save CDC approximately $6 million on an annual basis. Delaying transition postpones non-financial benefits of system - including improved visibility of inventory and shipped doses which are critical items during vaccine shortages.

7. If authorized, award of a contract under this solicitation is anticipated by no later than September 8, 2006

DETERMINATION:

Based on the foregoing and in accordance with FAR 33.104(b)(1) and HHSAR 333.104(b)(1), it is hereby determined to be in the best interest of the Government to award this contract to McKesson prior to disposition of the protest by GAO.

Jeffrey L. Napier, Contracting Officer
Acquisition and Assistance, Branch II
Procurement and Grants Office

Date: 9/7/06

Elmira C. Benson, Chief
Acquisition and Assistance, Branch II
Procurement and Grants Office

Date: 9/7/06

(✓) Recommend Approval
( ) Recommend Disapproval

**EXHIBIT 2.C**

**Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction,**
***General Injectables & Vaccines, Inc. v. United States***

**Declaration of Lawrence Z. Lorber**

# FAX TRANSMISSION

DHHS/OFFICE OF THE GENERAL COUNSEL/REGION IV
Suite 5M60 - 61Forsyth st., s.w.
Atlanta, Georgia 30303
Telephone: (404) 562-7819
Fax: (404) 562-7855

| | | | |
|---|---|---|---|
| **FROM:** | Elise Harris | **DATE:** | September 13, 2006 |
| **TO:** | Mr. Lawrence Z. Lorber, Esq. | **FAX #:** | (202) 416-6899 |
| **PHONE:** | | | |

**PAGES:** 7, including cover sheet

**SUBJECT:** B-298590; B298590-2

**COMMENTS:**

***IMPORTANT:*** This message is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination or copying of this information is strictly prohibited. If you receive this communication in error, please notify us immediately by telephone and destroy the original or return to us via regular mail. Thank you.

DEPARTMENT OF HEALTH & HUMAN SERVICES

Public Health Service
Centers for Disease Control
and Prevention (CDC)

**Memorandum**

Date: September 7, 2006

From: Head of Contracting Activity (HCA)
Procurement and Grants Office (PGO), CDC

Subject: Request for Authorization to Award Contract in Face of Protest
Solicitation No. 2006-N-08248, Centralized Vaccine Distribution

To: Marc R. Weisman, Deputy Assistant Secretary
Acquisition Management and Policy

In accordance with FAR Subpart 33.104(b)(1) and HHSAR Subpart 333.104(b)(1), approval is requested to make award to McKesson Specialty Distribution, LLC (McKesson) on the above referenced solicitation notwithstanding the protest submitted to the Government Accountability Office (GAO) by General Injectables & Vaccines, Inc. (GIV) on August 7, 2006 and supplemental protest submitted on August 25, 2006. The purpose of the requirement is to provide centralized receipt, storage, and distribution of licensed vaccines under federal contracts and non-federal contracts, as directed by the Government.

The attached Findings and Determination document specifies that it is in the best interest of the Government due to urgent and compelling circumstances to award this contract to McKesson, prior to disposition of the protest and supplemental by GAO. Also attached is a Statement of Facts document which summarizes the protest allegations and provides CDC's position.

Your earliest attention to approval of the attached Contracting Officer's Findings and Determination is requested as performance is slated to begin by September 8, 2006.

for Alan A. Kotch

Attachments

Copy: Doris Gibson, Department Protest Control Officer
William Ryan, Procurement and Grants Officer, Protest Control Officer

**Department of Health and Human Services**
**Centers for Disease Control & Prevention (CDC)**
**Findings and Determination**

**Authority to Award in Face of Protest Filed by General Injectables & Vaccines, Inc. (GIV)**
**General Accountability Office File No. B-298590; B-298590.2**

Pursuant to Federal Acquisition Regulation (FAR) Subpart 33.104(b)(1) and HHSAR Subpart 333.104(b)(1), the following findings and determination are provided to request authorization to proceed with contract award under a solicitation which is under protest to the General Accountability Office (GAO), based on urgent and compelling circumstances.

FINDINGS:

1. A protest before award under Solicitation No. 2006-N-08248, issued by the Centers for Disease Control & Prevention (CDC), was filed with the GAO on August 7, 2006 by GIV. A supplemental protest before award was filed on August 25, 2006 by GIV.

2. Solicitation No. 2006-N-08248 sought offers for the centralized receipt, storage and distribution of licensed vaccines under federal contracts and non-federal contracts, as directed by Government. The selection criteria notified potential offerors that technical merit and other non-cost factors would be of equal importance to cost/price. Further, the RFP informed all offerors that in evaluating proposals for award the Government would perform a "best value" analysis, making award(s) to the offeror(s) whose integrated proposal (Go/No-Go Requirement, technical and business proposal, oral presentation, final proposal revisions, past performance and site visits) represented the best overall value to the Government.

3. The proposal submitted by McKesson Specialty Distribution, LLC (McKesson) offers the best overall value to the Government. As indicated below, the estimated contract amount of McKesson's offer is $98,970,547.02, for a base period of three years and two 12-month option periods. The option periods will be exercised at the discretion of the Government.

| McKesson | Total Pricing |
|---|---|
| Base Yr 1 (East and West Regions) | 19,316,989.64 |
| Base Yr 2 (East and West Regions) | 19,316,989.64 |
| Base Yr 3 (East and West Regions) | 19,316,989.64 |
| Option Yr 1 (East and West Regions) | 20,457,289.05 |
| Option Yr 2 (East and West Regions) | 20,562,289.05 |
| Total | 98,970,547.02 |

The proposal submitted by GIV for the same base period and options is as follows:

| GIV | Total Pricing |
|---|---|
| Base Yr 1 (East and West Regions) | 51,035,518.00 |
| Base Yr 2 (East and West Regions) | 51,035,518.00 |
| Base Yr 3 (East and West Regions) | 51,035,518.00 |
| Option Yr 1 (East and West Regions) | 43,893,773.37 |
| Option Yr 2 (East and West Regions) | 44,640,276.40 |
| Total | 241,640,603.77 |

GIV's pricing is $142,670,056.75 more than McKesson's offer.

4. On July 18, 2006, GIV was informed both verbally and in writing of its elimination from the competitive range. While GIV's proposal was determined to be technically acceptable based on the evaluation criteria established in the solicitation, the level of cost proposed resulted in GIV's exclusion from the competitive range. On July 20, 2006 the Government received GIV's request for a preaward debriefing. CDC provided a written debriefing that complied with the FAR 15.505 (e) on July 27, 2006. Also, the CDC provided a response to GIV's written questions with regard to their preaward debriefing request on August 14, 2006.

5. Prior to award GIV filed a protest with the GAO. A copy of the protest was forwarded to the Contracting Officer on August 8, 2006. A supplemental protest before award was filed on August, 25, 2006.

6. The Federal Acquisition Regulations (FAR), Section 33.104(b)(1), entitled "A Protest before Award," states in part:

   (1) When the agency has received notice from the GAO of a protest filed directly with the GAO, a contract may not be awarded unless authorized, in accordance with agency procedures, by the head of the contracting activity, on a nondelegable basis, upon a written finding that:

      (a) Urgent and compelling circumstances which significantly affect the interest of the United States will not permit awaiting the decision of the GAO, and

      (b) Award is likely to occur within 30 days of the written finding.

7. **The GAO has until November 16, 2006, to render a decision under the protest and until December 4, 2006 to render a decision under the supplemental protest. Urgent and compelling circumstances exist which will not permit awaiting the decision of GAO.** In 2004, CDC decided to outsource vaccine distribution for all public-sector purchased vaccine in the United States. During the past two years, CDC has worked extensively with its 64 immunization grantees to transition this critical function from existing State vaccine distribution contracts and State owned and operated vaccine distribution depots to a centralized vaccine distribution contract.

   Any delay in the award of the contract will have a negative public health impact. Timely vaccine supply distribution is critical to maintaining immunization services throughout the country. Any disruption in vaccine supply distribution would impact the health of our nation's infants, children and adults. We experienced severe vaccine supply shortages several years ago which resulted in denying children life-saving vaccines. We learned through that experience that it is extremely challenging to recall children for immunization services after those services have been denied. Immunization coverage levels could drop to the point where the U.S. could face outbreaks of vaccine-preventable diseases.

   A detailed grantee transition timeline has been developed in consultation with each immunization project. In addition, nearly all of the immunization grantees are in the process of developing detailed transition action plans for the imminent contract award. Any slippage in this schedule will negatively impact CDC's ability to provide pediatric and adult vaccines to more than 44,000 provider sites receiving vaccine through CDC's federal vaccine purchase contracts.

   Detailed below are specific State examples that justifies the urgent public health requirement to award this centralized vaccine distribution contract by no later than September 8, 2006:

   A. Multiple State Contracts with existing vaccine distributors expire prior to March 31, 2007 - 26 Grantees, distributing approximately 62% of the public doses in the U.S. (over 40 million doses per

year), have contracts with a vaccine distributor. All of these State contracts expire prior to March 31, 2007. Further delays in contract award cut into the implementation timing for transition - potentially putting over half of the program's vaccine distribution at risk. Any slippage in the federal contract award will result in these states not having vaccine distribution services. Texas and California are both in this category.

B. New York State Multi-state Distribution contract - This is a single contract with a vaccine distributor that currently services 14 grantees and represents over 20% of the nation's public vaccine distribution. It expires March 31, 2007 - with no additional extensions allowed. This contract is not currently in the process of being renegotiated, under the assumption that these services will be replaced by the federal contract. Any slippage in the federal contract award will result in other states, including New York, not having vaccine distribution services.

C. New Jersey Contract with a vaccine distributor -- expires November 30, 2006,- this is the last vaccine distribution contract held by Bellco, who is interested in exiting the business of vaccine distribution altogether. To date, Bellco has not been willing to extend its contract. The federal contract should have been awarded no later than August 31st in order to transition New Jersey onto the federal contract by November 30th. Any further slippage in the timeline jeopardizes New Jersey's ability to supply vaccine to their immunization providers. This will result in denied immunization services throughout the state starting December 1, 2006.

D. Delaying transition to a new distributor delays any potential financial savings that may be realized, including replacement insurance for inventoried doses. The federal centralized vaccine distribution contract award will save CDC approximately $6 million on an annual basis. Delaying transition postpones non-financial benefits of system - including improved visibility of inventory and shipped doses which are critical items during vaccine shortages.

7. If authorized, award of a contract under this solicitation is anticipated by no later than September 8, 2006.

DETERMINATION:

Based on the foregoing and in accordance with FAR 33.104(b)(1) and HHSAR 333.104(b)(1), it is hereby determined to be in the best interest of the Government to award this contract to McKesson prior to disposition of the protest by GAO.

[signature] Date: 9/7/06

Jeffrey T. Napier, Contracting Officer
Acquisition and Assistance, Branch II
Procurement and Grants Office

[signature] Date: 9/7/06

Elmira C. Benson, Chief
Acquisition and Assistance, Branch II
Procurement and Grants Office

(✓) Recommend Approval
( ) Recommend Disapproval

Alan A. Kotch, Deputy Director
Procurement and Grants Office

Date: Sep. 7, 2006

( ✓) Concur
( ) Do Not Concur

Marc Weisman, Deputy Assistant Secretary
Acquisition Management and Policy

Date: Sept. 8, 2006

( ✓) Approved
( ) Disapproved

# EXHIBIT 3

**Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction,**
***General Injectables & Vaccines, Inc. v. United States***

**Declaration of Howard N. Kenyon Jr.**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | | |
|---|---|---|
| GENERAL INJECTABLES & VACCINES, INC., Plaintiff, | ) | |
| v. | ) | No. |
| UNITED STATES OF AMERICA, Defendant. | ) | |

**DECLARATION OF HOWARD N. KENYON JR.**

I, HOWARD N. KENYON JR., declare and say upon personal knowledge as follows:

1. I am a Certified Public Accountant in the office of K&F Consulting, Inc., a firm which I founded in 1991.

2. K&F Consulting, Inc. has its principal place of business at 8480M Baltimore National Pike #301, Ellicott City, Maryland 21043.

3. I possess over forty years of experience in the field of public accounting. In addition, I have specialized knowledge in the rules and regulations of government contracts. A true and correct copy of my curriculum vitae is attached.

4. I have been retained as a valuation expert by Plaintiff General Injectables & Vaccines, Inc. ("GIV") and have personally reviewed the cost information contained in the four-page Findings and Determination ("F&D") issued by the Centers for Disease Control and Prevention ("CDC") that relates to CDC Solicitation No. 2006-N-08248 and CDC's decision to award the contract to McKesson Specialty Distribution, LLC ("McKesson"). On September 29,

2006, the United States Government Accountability Office ("GAO") granted my application for access under the protective order in the underlying GAO proceeding.

5. Based upon my review of paragraph 3 of the F&D, which contains what purports to be a comparison of the estimated contract amounts based on CDC's review of the GIV and McKesson bids, it is my opinion that the F&D materially overstates what the cost of the contract would be under GIV's bid.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on September 29, 2006

Howard N. Kenyon Jr., CPA

# HOWARD N. KENYON, JR.

**CURRICULUM VITAE**

## Current Situation

Howard N. Kenyon, Jr. is a principal in the Washington, DC office of K&F Consulting, Inc. (8480M Baltimore National Pike # 301, Ellicott City, MD 21043) a firm he founded in 1991. Mr. Kenyon is a Certified Public Accountant and possesses over 40 years experience in the field of public accounting. He practiced as a generalist in his earlier years of public accounting and later as a specialist on government contract accounting matters. His experience includes manufacturing, construction, service and not-for-profit organizations at both the prime and subcontractor level. A substantial portion of his work has involved the preparation and resolution of equitable adjustment proposals for contract changes and terminations and testifying as an expert accounting witness. Mr. Kenyon is highly proficient in the rules and regulations governing government contracts as well as the opinions, pronouncements and standards comprising Generally Accepted Accounting Principles and their implementation within a Government Contractor's/Construction Company's business systems.

## Prior employment

Consultant, government contracts accounting. T.A Carlson & Co. 1988-1991

> Working primarily with large defense contractors developed indirect cost structures, wrote policy and procedure manuals for profitable and compliant performance of government contracts, performed compliance reviews, studied factual circumstances of contract performance as basis for quantifying cost of changes, and developed cost proposals.

Manager, governments contracts services. BDO Seidman. 1985-1988

> Provided various services to government contractor clients including consultation on cost, pricing and compliance matters, accounting systems and cost structures. Analyzed accounting data to quantify cost of changes, delays, etc. Audited claimants' asserted damages claims. Testified as accounting expert.

Practicing CPA, concentrating on government contractor issues. Self employed. 1979-1985

> Specialized in servicing government contractors and their attorneys in presenting and defending claims, testifying as an expert on contract accounting matters, developing and implementing accounting systems compliant with FAR cost principles and Cost Accounting Standards.

Practicing CPA, general practice. Leopold & Linowes. 1963-1979

Auditing financial statements of various commercial and not-for-profit entities; preparing tax returns; designing and installing accounting systems; and performing special studies of internal control systems. Under a contract with a US government agency performed financial and compliance audits of government contractors. Developed accounting systems for government contractors. Worked with attorneys in obtaining evidence and quantifying claims by contractors.

Internal auditor. D.C Government. 1960-1963

Auditing of D.C. government agencies (Dept of Corrections, Public Schools, General Hospital, Libraries, Buildings and Grounds, etc.) for compliance with enabling acts, commissioners' orders and appropriations acts. Conducted special audits and investigations for alleged fraud, theft and misappropriation.

U.S Army, Signal Corps. 1957-1959

Accountant, public accounting. Councilor, Buchanan & Mitchell. 1955-1957 and 1959-1960

Auditing financial statements of various commercial entities and preparing tax returns for individuals and businesses.

## Previous expert testimony

District Court District of Columbia, 1962, D.C. Govt. v. Apex Liquors, Inc. - Government's witness to establish licensees's untaxed inventory of alcoholic beverage based on Internal Audit Office's audit supervised by Mr. Kenyon.

International Tribunal, Georgetown Guyana, 1980, International Systems and Controls v. Govt. of Guyana - Claimant's witness to rebut Guyana Government's damages counterclaim.

Armed Services Board of Contract Appeals, 1981- Appellant's witness to support costs of contract delay.

Deposition, Mountain States Insulation Company, Inc. v. Kennecott Copper (or prime contractor), 1981

District Court, Southern California 1987, Blake Construction v. Steel Erectors. Testimony regarding Mr. Kenyon's audit of plaintiff's claim.

Mini Trial, Atlanta Georgia, Industrial Contractors, Inc. v. Corps of Engineers, 1988. Testimony to demonstrate plaintiff's delay damages.

Deposition- Industrial Contractors, Inc. v. Parsons Constructors1993. Testimony regarding Mr. Kenyon's computations of amounts due plaintiff under termination for convenience.

United States District Court for the District of Columbia, Shapiro, Lifschitz and Schram v. R.E. Hazard, Jr. et al. Hearing on Plaintiff's motion, 2/12/99 regarding Mr. Kenyon's audit of transfer and commingling of corporate assets.

United States District Court for the Eastern District of North Carolina, USA fub Bryant-Durham Electric Company, Inc./Starr Electric Company, Inc. Plaintiff v. Blake Construction, Inc., Defendant/Counterclaim Plaintiff. Expert testimony for defendant regarding Mr. Kenyon's analysis of plaintiff's claim, review of termination settlement proposal and calculation of counter claim.

Deposition- Foster Wheeler Environmental Corp. et al, plaintiffs v. The State of New Jersey, Environmental Protection Agency, et al, defendants. Testimony for defendant regarding Mr. Kenyon's audit of Foster Wheeler's asserted damages.

Deposition- Appeal of Metric Constructors, Inc. on behalf of itself and its subcontractor, Acousti Engineering Co. of Florida, under contract No. NAS 10-11800) ASBCA No. 52647. Expert testimony for Appellant regarding Mr. Kenyon's quantification of damages.

Armed Services Board of Contract Appeals- Appeal of Metric Constructors, Inc. on behalf of itself and its subcontractor, Acousti Engineering Co. of Florida, under contract No. NAS 10-11800) ASBCA No. 52647. Expert testimony for Appellant regarding Mr. Kenyon's quantification of damages and rebuttal of other experts.

## Education

Mr. Kenyon received his Bachelor's of Commercial Science Degree from Southeastern University. Additionally, continuing professional education has been accomplished each year in accordance with requirements of District of Columbia Board of Accountancy.

## Professional license

He is a Certified Public Accountant in the District of Columbia since 1963.

## Professional affiliations

He is a member of the District of Columbia Institute of Certified Public Accountants, the National Contract Management Association, the National Defense Industrial Association, Public Contracts section of the American Bar Association, and the Government Contracts and Litigation Section of the District of Columbia Bar Association.

## Speaking engagements

CPA Associates, 1976 - Quality Control Compliance for Management Advisory Services Engagements

Independence Federal S&L Association sponsored Not-for-Profit Seminar, 1977 - Organizing to Manage government contracts and Grants

D.C. Institute of CPAs, 1978 - GAO Standards for Audit

D.C. Institute of CPAs, 1979 - Cost Accounting (CPE course)

Federal Publications, Inc., 1980 - Pricing of Claims, Measuring Work Progress.

National Contract Management Association, NES 1986. Government Audits.

National Contract Management Association, FASA, FARA

National Contract Management Association, Commercial Contracting

Nash & Cibinic Roundtable, 1996. Calculating Fixed Cost Damages

## Publications

Mr. Kenyon has lectured on and written about various contract and cost accounting subjects. His list of publications includes:

*"Unabsorbed Overhead: Abandon Eichleay"*, The Nash & Cibinic Report, Vol. 13, No. 6, June 1999, Federal Publications, Inc.

*"Closing the Gate on Unabsorbed Overhead Claims"*, The Government Contractor, Vol. 39, No. 45, November 26, 1997, Federal Publications, Inc.

*"Fixed Costs and Contract Delay"*, National Contract Management Journal, Vol. 27, issue 2 (1996).

*"Calculating Fixed-Cost Damages From Delay"*, The Nash & Cibinic Roundtable Portfolio 1996, Federal Publications, Inc.

*"The Implications of FAS 121 and the Interim Rule For Government Contractors: A Sensible Approach to the Determination of Impaired Assets"*, Federal Contracts Report, Bureau of National Affairs, April 29, 1996.

"*Needed: A Fixed Cost Pricing Policy*", Contract Management, December, 1988, The National Contract Management Association. (Reproduced by The Defense Systems Management College for educational purposes, 1991.)

Accounting Guide to Billing, Collection and Revenue Recognition for the Software Contractor, 1976, Leopold and Linowes.

**EXHIBIT 4**

**Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction,**
***General Injectables & Vaccines, Inc. v. United States***

***Automation Techs., Inc. v. United States*, --- Fed. Cl. ---,**
**No. 06-599C, 2006 WL 2720642 (Sept. 21, 2006)**

Only the Westlaw citation is currently available.

United States Court of Federal Claims.
AUTOMATION TECHNOLOGIES, INC., Plaintiff,
v.
UNITED STATES, Defendant,
and
Digital Technologies, Inc., Defendant-Intervenor.
**No. 06-599C.**

Filed Sept. 11, 2006.
Unsealed Sept. 21, 2006. [FN1]

FN1. This Order was issued under seal on September 11, 2006, to afford the parties an opportunity to propose redactions. No redactions were proposed. The Order was, therefore, unsealed and re-issued on September 21, 2006.

**ORDER**

MARIAN BLANK HORN, Judge.

*1 Plaintiff Automation Technologies, Inc. (ATI) filed an August 22, 2006 complaint challenging an agency override of the automatic stay stemming from a Government Accountability Office (GAO) bid protest. The complaint was accompanied by requests for a temporary restraining order and a preliminary injunction. The complaint seeks a declaratory judgment holding that the agency's decision to override the stay is arbitrary, capricious, or otherwise not in accordance with law, a reinstatement of the stay, and permanent injunctive relief. Defendant and intervenor filed responses on August 25, 2006, and the court held a hearing on August 28, 2006. At the August 28, 2006 hearing, the agency indicated that it intended to issue task orders and proceed with the awardee and intervenor, Digital Technologies, Inc. (DTI), on September 1, 2006. The court issued a bench ruling on the propriety of the override, in favor of the plaintiff on August 31, 2006, the same day that task orders issued to the plaintiff, which was the incumbent on the contract, would have expired. This Order memorializes the bench ruling.

The United States Customs and Border Protection (Customs) agency, part of the Department of Homeland Security, solicited proposals for computer maintenance services. Plaintiff ATI, intervenor DTI, and a third offeror, Signature Technology Group, Inc. (STG), submitted proposals. The technical evaluation score for ATI was higher than DTI's score, 85 percent to 76 percent. [FN2] In this initial evaluation, ATI's price was lower than DTI's price. Customs awarded the contract to ATI on January 4, 2006. On January 11, 2006, DTI filed a protest with the GAO (Comp.Gen.B-297851). An automatic stay of the award to ATI stemmed from the GAO protest, pursuant to 31 U.S .C. § 3553(d)(3)(A) (2000). A Customs official, however, determined that it was in the "best interests of the United States" to override the automatic stay pursuant to 31 U.S.C. § 3553(d)(3)(C)(i)(I), permitting ATI to proceed with the contract.

FN2. Customs' December 29, 2005 Price Negotiation Memorandum stated that the technical evaluation score for DTI was 75 percent. However, Customs' June 28, 2006 Price Negotiation Memorandum indicates that a mathematical error was made in the earlier evaluation, and that DTI's technical evaluation score should have been 76 percent. The June 28, 2006 Price Negotiation Memorandum also noted that the technical scores might have been even closer: "Although ATI's technical proposal identified their agreement with the OEM [Original Equipment Manufacturer] Fujitsu as exclusive, DTI supplied a letter signed by Fujitsu indicating that Fujitsu is prepared to enter into an OEM agreement with DTI. Had this information been available to the SEB [Source Evaluation Board], it would likely have had an impact on the evaluation."

DTI proceeded with this earlier protest. Upon hearing that the GAO believed improper discussions may have taken place, Customs took corrective action and, as a result, the protest was dismissed by the GAO on March 23, 2006. The agency's corrective action included an amendment of the solicitation, submission of revised price proposals by ATI, DTI, and STG, and a new source selection decision. Since only price proposals were re-submitted, the technical submissions and scores remained the same from the earlier evaluation. However, DTI was the lower bidder this time compared to ATI. According to Customs' June 28, 2006 Price Negotiation

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Memorandum:

> The solicitation stated that between competing proposals, the Government is not willing to pay *significantly more for a minor difference in the non-cost or price factors rating,* nor is the Government willing to forego a significant difference in the non-cost or price factors rating in exchange for a small cost/price differential.
>
> * * *
>
> ***2** CPB [Custom and Border Protection] is unwilling to pay 17% more than DTI's offered price to obtain a 9 percentage point increase in technical scoring, particularly when DTI has provided this service to CBP in the past at an acceptable performance level.

(emphasis in original).

On August 4, 2006, Customs made an award to DTI on the amended solicitation. On August 11, 2006, ATI filed a bid protest with the GAO (Comp.Gen.B-298618). The GAO decision was expected by November 20, 2006. [FN3] An automatic stay went into effect pursuant to 31 U.S.C. § 3553(d)(3)(A).

> FN3. Although the GAO is given 100 days, by statute (31 U.S.C. § 3554(a)(1)), to issue a final decision on a protest, and at the hearing the parties indicated that the GAO's decision was anticipated on November 20, 2006, the GAO delivered its decision earlier, on September 6, 2006, in a short opinion dismissing ATI's protest on the grounds that ATI had not been prejudiced, because it "already holds a contract for the requirement, [and] there is no additional remedy available to it...." Comp. Gen. Dec. B-298518, B-298518.2, slip op. at 2 (Sept. 6, 2006). The GAO decision does not alter the court's prior, August 31, 2006, final, bench ruling on the agency override, or this Order memorializing the court's bench ruling.

On August 17, 2006, a Customs official executed a Determination and Findings (D & F) to override the automatic stay. The D & F was based on an evaluation of the GAO protest, which concluded that the protester, ATI, will lose the protest:

> The protest matter pertaining to the cost/technical tradeoff is without merit since the tradeoff analysis was well documented as shown on pages 7-8 of the attached Price Negotiation Memorandum (PNM) and strongly supported the award decision. As stated in the solicitation, between competing proposals, the Government is not willing to pay significantly more for a minor difference in the non-cost or price factors rating. In this instance, the difference in price was simply too great to overcome given the comparatively small difference in the technical/past performance scores.
>
> Although the awardee's pricing will result in significant cost savings to the Government, the protest basis pertaining to unrealistically low CLIN [contract line item number] pricing (CLINs 0002 and 0010 in particular) is unfounded. The protestor states simply that the awardee does not understand the Government's requirements. CLIN pricing offered by the protestor and the awardee is shown in the PNM. As to downgrade of the awardee's offer for poor past performance, the protestor is unaware that CBP/OIT [a Customs entity] was used as a past performance reference by the awardee, and the awardee received the highest possible past performance rating from CBP/OIT.
>
> The portion of the protest pertaining to the technical evaluation/scoring will be resolved against the protestor, since the protest is now untimely. Technical scoring for all offerors was released with Amendment No. 0004 on April 6, 2006.

The D & F then concluded that it was in the "best interests of the United States" to proceed with the award to DTI, because significant cost savings would result. Customs estimated that $103,196.27 per month could be saved by issuing task orders to DTI on September 1, 2006.

*The Automatic Stay*

Automatic stays of the procurement were instituted for both of the protests discussed above, the first one by DTI, and the second one, the propriety of the override of which is before this court, filed by ATI. The automatic stay is statutory:

> (A) If the Federal agency awarding the contract receives notice of a protest in accordance with this section during the period described in paragraph (4)--
>
> ***3** (i) the contracting officer may not authorize performance of the contract to begin while the protest is pending; or
>
> (ii) if authorization for contract performance to proceed was not withheld in accordance with paragraph (2) before receipt of the notice, the contracting officer shall immediately direct the contractor to cease performance under the contract and to suspend any related activities that may result in additional obligations being incurred by the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

United States under that contract.
(B) Performance and related activities suspended pursuant to subparagraph (A)(ii) by reason of a protest may not be resumed while the protest is pending.
31 U.S.C. § 3553(d)(3)(A), (B).

*The Agency Override*

On August 17, 2006, Customs notified the GAO, which was considering ATI's protest, that the agency was overriding the automatic stay. The override authority is found in the same GAO bid protest legislation that provides for the automatic stay:

(C) The head of the procuring activity may authorize the performance of the contract (notwithstanding a protest of which the Federal agency has notice under this section)--
(i) upon a written finding that--
(I) performance of the contract is in the best interests of the United States; or
(II) urgent and compelling circumstances that significantly affect interests of the United States will not permit waiting for the decision of the Comptroller General concerning the protest; and
(ii) after the Comptroller General is notified of that finding.
31 U.S.C. § 3553(d)(3)(C).

On August 17, 2006, the "head of the procuring activity," Customs' Executive Director of Procurement, John H. Ely, signed a Determination and Finding (D & F), constituting the statute's "written finding" to support an override of the stay. 31 U.S.C. § 3553(d)(3)(C)(i). As noted above, the agency's D & F first evaluated the basis for ATI's protest before the GAO, and concluded that ATI's charges were without merit and would not succeed. Before the GAO, ATI is challenging the agency's tradeoff analysis (comparing the technical evaluation, past performance, and price analysis). The solicitation stated that Customs would award the contract on a "best value" basis. The evaluation factors were technical, past performance, and price, in descending order of importance. According to the solicitation, technical factors were "significantly more important" than past performance, and past performance was "significantly more important" than price. The solicitation stated that: "The Government is more concerned with obtaining superior technical and performance capability (demonstrated by past performance) than with making an award at the lowest cost or price."

ATI's technical/past performance score was 85 percent, compared to DTI's lower 76 percent score. ATI's evaluated price (including options), however, was $6,872,902.44 higher than DTI's price (ATI's price: $46,635,300.00 compared to DTI's price: $39,762,397.56). Customs' D & F concluded that its tradeoff analysis was appropriate, that "the Government is not willing to pay significantly more for a minor difference in the non-cost or price factors rating. In this instance, the difference in price was simply too great to overcome given the comparatively small difference in technical/past performance scores."

***4** ATI also is protesting before the GAO that DTI's CLIN (contract line item numbers) pricing is unrealistically low, particularly the pricing of CLINs 0002 and 0010. ATI argues that the CLIN pricing is so low as to reflect a poor understanding on the part of DTI of solicitation requirements. Customs' D & F disagrees and, to the contrary, wants to take advantage of DTI's lower costs, particularly since DTI has performed acceptable work for Customs in the past, according to Customs' June 28, 2006 Price Negotiation Memorandum on the competition for the amended solicitation.

ATI also is arguing before the GAO that DTI's offer should have been downgraded for poor past performance. Customs' D & F noted that ATI was unaware that a Customs office gave DTI the highest possible past performance rating. In addition, before the GAO, ATI alleges that the technical evaluation of ATI was unreasonable, even though ATI's technical/past performance score was higher than DTI's score. Customs' D & F concluded that ATI's challenge on the technical evaluation will be resolved against ATI because the protest on this ground was untimely. Therefore, Customs' D & F concludes that the GAO protest will not succeed.

Customs' D & F also notes that overriding the stay and proceeding with the contract "will result in significant savings to the Government, and therefore is in the best interests of the United States." The D & F lists the savings over the potential five-year period of the contract, ranging from a projected savings of $103,198 .27 per month in the first year to a high of $118,330.98 per month in the fourth year. The D & F, therefore, relies exclusively on the statutory criteria that, in spite of the protest, proceeding with the "performance of the contract is in the best interests of the United States," and does not implicate the alternative basis for override, "urgent and compelling circumstances that significantly affect interests of the United States will not permit waiting

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

for the decision of the Comptroller General...." 31 U.S.C. § 3553(d)(3)(C)(i)(I), (II).

*Jurisdiction*

The issue ATI brings before this court is the propriety of the agency's override of the automatic stay resulting from the GAO protest, not the merits of the solicitation process. The United States Court of Appeals for the Federal Circuit has determined that the Court of Federal Claims possesses jurisdiction over agency override decisions, even when there is a concurrent, pending bid protest before the GAO. The issue of this court's jurisdiction was addressed by the United States Court of Appeals for the Federal Circuit in *RAMCOR Services Group,* in which the Circuit Court found that the Court of Federal Claims had jurisdiction to review an override based on urgent and compelling circumstances in a pre-award case. *RAMCOR Servs. Group, Inc. v. United States,* 185 F.3d 1286, 1289-91 (Fed.Cir.1999); *see also* ***Advanced Sys. Dev., Inc. v. United States,* 72 Fed. Cl. 25, 29 (2006)** (the Court of Federal Claims has jurisdiction to review an override based on the best interests of the United States); *PGBA, LLC v. United States,* 57 Fed. Cl. 655, 658-660 (2003) (the Court of Federal Claims has jurisdiction to review an override based on both the best interests of the United States and urgent and compelling circumstances, as provided in the Competition in Contracting Act (CICA)).

*Standard of Review*

*5 The court's role is to determine if the override was based on "a consideration of the relevant factors and whether there has been a clear error in judgment" by the agency. ***Advanced Sys. Dev., Inc. v. United States,* 72 Fed. Cl. at 30** (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416 (1971)). The court's role is to determine if the agency relied on factors Congress did not intend for the agency to consider; failed entirely to consider an important aspect of the problem; offered an explanation for its decision which is not supported by the evidence before it; or, whether the agency's decision is simply too implausible. ***Advanced Sys. Dev., Inc. v. United States,* 72 Fed. Cl. at 30** (citing *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983)). Basically, the court must determine whether the agency "considered the relevant factors and made a rational decision based on those factors." ***Advanced Sys. Dev., Inc. v. United States,* 72 Fed. Cl. at 30** (citing *Advanced Data Concepts, Inc. v. United States,* 216 F.3d 1054, 1058 (Fed.Cir.2000)).

*The Override*

In the D & F in support of the override, Customs stated that the override was based on "significant savings to the Government, and therefore is in the best interests of the United States." ATI argues that Customs' override decision was arbitrary, capricious, and contrary to law because, as acknowledged by defendant, it was based, solely and exclusively, on projected cost savings if DTI were to proceed under the contract immediately. In this regard, ATI points to case authority which has rejected cost savings as a basis to support an override of an automatic stay.

In the first case plaintiff cites, *PGBA,* the agency's override was enjoined. *PGBA, LLC v. United States,* 57 Fed. Cl. 655, 664 (2003). The critical basis for the agency's override in *PGBA* was a four-month slippage in the implementation of a health care program for military retirees and their families, absent the override. *Id.* at 661. The court, however, rejected the agency's assumption that a harmful slippage would inevitably occur. *Id.* The record in the case indicated to the court that some if not all of the anticipated slippage could be made up. *Id.* The agency in *PGBA* also had estimated that the four-month slippage would cost about $21.1 million. *Id.* The court concluded that this figure assumed the four-month delay, which was called into question, and included regions not due to become operational immediately, whereas if only one region were delayed, perhaps only 2 percent, or about $100,000.00 per month would be lost without the override. *Id.* at 661-62. Customs' D & F in the present case estimates that proceeding with task orders under the DTI contract, rather than awaiting the GAO's decision, would save $103,198.27 per month. This is about the same cost savings deemed insufficient to support an override by the court in *PGBA.*

*6 The court in *PGBA* identified a factor that the agency did not but should have considered:

> Moreover, the Director [of Acquisition Management and Support] did not diminish the cost savings associated with his override decision by an amount corresponding to the risk that the protest would be sustained and the agency would be forced to reimburse WPSI [Wisconsin Physicians Service Insurance Corp.] for reasonable costs incurred during what would have been the stay period. The Director made no effort to quantify these costs, assuming instead either that the GAO protest would be denied, or that if

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

> sustained, WPSI would continue to perform. In the court's view, the Director thus appears all but to have ignored a variable that should have been an important aspect of his cost evaluation calculus.

*PGBA, LLC v. United States,* 57 Fed. Cl. at 662 (footnote omitted but discussed immediately below). As in *PGBA,* the posture of Customs in its override D & F was that the protest would be denied. The D & F in the case before this court also does not address the ramifications of a loss in the GAO protest. Yet, as noted by the court in *PGBA,* there was an indication in the Conference Report accompanying CICA that this is a factor which should be considered:

> Before notifying the Comptroller General that continued performance of a disputed contract is in the government's best interest, however, the head of the procuring activity should consider potential costs to the government from carrying out relief measures as may be recommended by the Comptroller General if the protest is subsequently sustained. This is to insure that if the Comptroller General sustains a protest, such forms of relief as termination, re-competition, or re-award of the contract will be fully considered for recommendation. Agencies in the past have resisted such recommendations on the grounds that the government's best interests would not be served by relief measures of this sort because of the added expenses involved. This provision is designed to preclude that argument in the future, and thus to avoid prejudicing those relief measures in the Comptroller General's review.

*PGBA, LLC v. United States,* 57 Fed. Cl. at 662 n. 11 (quoting H.R. Conf. Rep. No. 98-861, at 1436 (1984)).

The court in *PGBA* also noted that the current contract could be extended to provide the services needed. *PGBA, LLC v. United States,* 57 Fed. Cl. at 662. The same is true for the present case. In *PGBA,* as in the present case, this left only the agency rationale for the override "that the new contracts will provide better and more efficient services...." *Id.* The court in *PGBA,* as does this court, found such a rationale insufficient.

> [W]ithout more, the court does not believe that the mere fact that the new contracts would be better than the old is enough to support the override decision under either prong of section 3553.... [W]ere the fact that a new contract is better than the old sufficient for this purpose, little would be left of Congress' efforts in CICA to strengthen the stay provisions and, with that, promote the integrity of the GAO review process.... [T]he best interests of the "United States" must be involved and those interests necessarily include weighing the benefits Congress obviously felt were furthered by bolstering the bid protest process and, in turn, promoting competition in contracting.

*7 *PGBA, LLC v. United States,* 57 Fed. Cl. at 662-63.

This court, however, does not conclude that cost savings and other improvements can never be a sufficient basis to support an override. Override cases are necessarily fact dependent. Customs' estimated $103,196.27 per month cost savings, between September 1 and November 20, 2006, in the context of an anticipated five-year, $49,500,00.00 contract, with options, is an insufficient basis to support an override, given the other facts of the case before the court.

ATI also cites the *University Research* case, in which the agency's override decision was enjoined as unreasonable, as in *PGBA. Univ. Research Co., LLC v. United States,* 65 Fed. Cl. 500, 503 (2005). The May 23, 2005 *University Research* opinion addresses the bid protest itself, and not the agency override, but does briefly describe the court's earlier bench ruling enjoining the override, which concluded that the rationale for the override was unreasonable. *Id.* The court in *University Research* cited the agency's determination that the "best value" could be obtained by proceeding with the award in spite of the protest. *Id.* The court noted that if best value were sufficient to support an override, "as a practical matter, the automatic stay would be meaningless in virtually every single instance in which a GAO protest was filed. Almost invariably when a contract is awarded through a competitive process, the award will be based on the awardee offering the government the best value, and in many cases this also means the contract will cost the government less money." *Id.* (citation omitted). The solicitation in the present case also is a "best value" procurement. [FN4] As in both *PGBA* and *University Research,* a factor in the review of an override decision must be a balancing of considerations to assess reasonableness, including the impact on the competition in contracting and bid protest processes.

FN4. The solicitation in the present case defines best value "as the procurement process that results in the most advantageous acquisition decision for the Government and is performed through an integrated assessment and trade-off analysis between cost or price and non-cost or [non-]price factors (i.e., technical evaluation factors and

past performance)[."]

ATI also cites to the *CIGNA* case, in which the court enjoined an agency override. CIGNA Gov't Servs., LLC v. United States, 70 Fed. Cl. 100, 114 (2006). In *CIGNA*, the override decision was primarily based on the rationale that a stay would delay the implementation of an improved Medicare claims processing system, resulting in $5 million in cost savings and enhanced performance. *Id.* at 111. The court found, however, that the agency used this delay-based justification for the override, but told Congress a different story, completely undercutting the basis for the override. *Id.* Nor did the court accept the figure of $5 million in cost savings, since that figure related to a full year and not just the period of delay until the GAO decision, and reflected savings for all regions and not just those regions impacted by the override. *Id.* at 113. The court in *CIGNA* concluded that the prospect of proceeding with an improved contract, which would enhance services and provide efficiencies over the prior contract, was insufficient support for a best interests override. *Id.* (citing and quoting Chapman Law Firm Co. v. United States, 62 Fed. Cl. 464, 466 (2004) ("Normally the fact that a new contract is better than an old contract would not constitute a valid basis for an override decision.")).

*8 ATI also cites to the case of ***Advanced Systems Development***, in which the agency's override was rejected and the automatic stay reinstated. ***Advanced Sys. Dev., Inc. v. United States*, 72 Fed. Cl. at 37**. The court in ***Advanced Systems Development*** followed the lead of *PGBA* and *University Research*, stating that:

> The allegation that the new contract is better than the old one in terms of cost or performance is not enough to justify a best interests determination. PGBA, 57 Fed. Cl. at 662. Indeed, it will almost always be the expectation that the new contract will be an improvement over the old. *Id.* at 663. To allow a best interests determination to rest on such a common ground would permit the override exception to swallow the Congressionally mandated rule that stays be automatic. *Id.; accord* Univ. Research Co. v. United States, 65 Fed. Cl. 500, 503 (2005).

***Advanced Sys. Dev., Inc. v. United States*, 72 Fed. Cl. at 31**.

The override was not sustained in the above cases. However, cases in which an override was sustained are distinguishable from the present case, and similarly instructive. For example, in the *Alion* case, the agency had time-critical work, and a single contractor with qualified personnel to perform the work. The override, justified under both the "best interests of the United States" and urgent and compelling circumstances, was sustained as reasonable. *Alion Sci. and Tech. Corp. v. United States*, 69 Fed. Cl. 14, 25, 27, 29 (2005). In the *Chapman* case, the override was necessary to permit the incumbent to perform critical services. Without the override, the agency estimated it would lose $3 million per month, and that government properties would be unmanaged and subject to vandalism. To prevent financial losses and protect the public safety, the agency's "best interests of the United States" determination was upheld by the court. *Chapman Law Firm Co. v. United States*, 67 Fed. Cl. 188, 192 (2005). In the *Spherix* case, without the override, the agency would suffer a year-long delay in a critical program, and the system would not be operational during the critical season when it was needed. *Spherix, Inc. v. United States*, 62 Fed. Cl. 497, 506-07 (2004). The agency's best interests determination was upheld by the court. *Id.* at 508.

As indicated by review of cases decided for and against an override, override cases are fact specific. In the present case, the court concludes that while cost savings may be sufficient to support an override in the proper case, this is not that case. Moreover, an agency's discretion is not unfettered, but constrained by a consideration of relevant factors, including the ramifications of an agency loss in the GAO protest, and the impact of an override on the competition in contracting and bid protest processes, as well as respect for the GAO, an important component in the statutory structure of how to address protests to government procurement actions. The ability to extend a contract, or, in this case, to add task orders to a contract, without difficulty, through December, 2006, in order to perform the critical computer maintenance work, is another important factor, coupled with the fact that both the plaintiff and the intervenor have performed this work in the past. Reviewing the rationale in the agency's D & F, and weighing the above factors, the court has concluded that, given the record before the court, the agency override was unreasonable.

*9 On August 31, 2006, the court **GRANTED** the plaintiff's request for a declaratory judgment. [FN5] The override decision issued by Customs is declared to be unreasonable, arbitrary and capricious and invalid. The override decision is set aside, and the automatic stay stemming from ATI's GAO protest is reinstated. The clerk's office shall enter

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**JUDGMENT** for the plaintiff in accordance with this Order.

> FN5. ATI has requested both declarative and injunctive relief. The court, above, has granted ATI's request for declaratory judgment, and declared Customs' override to be invalid, resulting in a reinstatement of the stay. *See* 28 U.S.C. § 1491(b)(2) (2000) (providing for declaratory relief). As the court stated in *CIGNA Government Services:*
> Because the declaratory judgment will reinstate the stay and vacate the override, having the same effect as an injunction, the Court does not reach the issue of injunctive relief. In so ruling, the Court has taken into account the necessity of resolving this matter expeditiously recognizing that each day that passes prolongs the time when the stay is not in effect. *CIGNA Gov't Servs., LLC v. United States,* 70 Fed. Cl. at 114; accord ***Advanced Sys. Dev., Inc. v. United States,*** **72 Fed. Cl. at 36-37**; *Chapman Law Firm Co. v. United States,* 65 Fed. Cl. 422, 424 (2005).

The court held a conference with the parties on September 7, 2006, the day following the GAO's issuance of its decision dismissing ATI's protest. As discussed with the parties at that conference, ATI is considering asking the GAO to reconsider its September 6, 2006 decision and/or filing a complaint on the merits of the solicitation process in this court. If ATI should file a new complaint on the August 4, 2006 award by Customs to DTI in this court, the clerk's office shall waive the filing fee and assign the complaint to the undersigned judge. Any such filing by ATI should cite and draw the attention of the clerk's office to this paragraph.

**IT IS SO ORDERED.**

2010354092

2010354092

--- Fed.Cl. ----, 2006 WL 2720642 (Fed.Cl.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT 5**

**Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction,**
***General Injectables & Vaccines, Inc. v. United States***

**Proposed Order (Non-Injunctive Relief)**

**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| GENERAL INJECTABLES & VACCINES, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**ORDER**

Upon consideration of Plaintiff General Injectables & Vaccines, Inc.'s Motion for a Temporary Restraining Order and Preliminary Injunction, it is this ____ day of ____________, 2006,

**ORDERED** that that the override decision issued by the Centers for Disease Control and Prevention is declared to be arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law; and it is

**FURTHER ORDERED** that said override decision is declared invalid and shall be set aside, and the automatic stay stemming from Plaintiff's protest before the Government Accountability Office is hereby reinstated.

**SO ORDERED.**

______________________________
Judge, United States Court of Federal Claims

Copies To:

Mark J. Biros, Esq.
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue, NW
Suite 400 South
Washington, DC 20004-2533
202.416.6800
202.416.6899 (fax)

*Attorney of Record for Plaintiff General Injectables & Vaccines, Inc.*

Delisa Sanchez, Esq.
Commercial Litigation Branch, Civil Division
DEPARTMENT OF JUSTICE
1100 L Street, NW, Room 7014
Washington, DC 20530
202.616.0337
202.305.7643 (fax)

*Attorney of Record for Defendant United States of America*

Elise Harris, Esq.
Assistant Regional Counsel
Office of the General Counsel,
Region IV
DEPARTMENT OF HEALTH & HUMAN SERVICES
61 Forsyth Street, SW, Suite 5M60
Atlanta, GA 30303-8909
404.568.7819
404.562.7855 (fax)

*Attorney for Contracting Agency Centers for Disease Control and Prevention*

David R. Hazelton, Esq.
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004-1304
202.637.2254
202.637.2201 (fax)

*Attorney for Contract Awardee McKesson Specialty Distribution, LLC*

**EXHIBIT 6**

**Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction,**
***General Injectables & Vaccines, Inc. v. United States***

**Proposed Order (Injunctive Relief)**

**UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| GENERAL INJECTABLES & VACCINES, INC., Plaintiff, v. UNITED STATES OF AMERICA, Defendant. | No. |

**ORDER**

Upon consideration of Plaintiff General Injectables & Vaccines, Inc.'s Motion for a Temporary Restraining Order and Preliminary Injunction, and it appearing to the Court that Plaintiff has shown a likelihood of success on the merits and that immediate and irreparable harm and damage will result to Plaintiff in the absence of injunctive relief, it is this ____ day of ______________, 2006,

**ORDERED** that until such time as the Government Accountability Office issues a determination on Plaintiff's pending bid protest, Defendant United States of America, it agents, servants, employees, successors and assigns, and all those in active concert or participation with them, be and hereby are enjoined and restrained from beginning or continuing performance under the contract awarded pursuant to CDC Solicitation No. 2006-N-08248.

**SO ORDERED.**

_______________________________________
Judge, United States Court of Federal Claims

Copies To:

Mark J. Biros, Esq.
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue, NW
Suite 400 South
Washington, DC 20004-2533
202.416.6800
202.416.6899 (fax)

*Attorney of Record for Plaintiff General Injectables & Vaccines, Inc.*

Elise Harris, Esq.
Assistant Regional Counsel
Office of the General Counsel, Region IV
DEPARTMENT OF HEALTH & HUMAN SERVICES
61 Forsyth Street, SW, Suite 5M60
Atlanta, GA 30303-8909
404.568.7819
404.562.7855 (fax)

*Attorney for Contracting Agency Centers for Disease Control and Prevention*

Delisa Sanchez, Esq.
Commercial Litigation Branch, Civil Division
DEPARTMENT OF JUSTICE
1100 L Street, NW, Room 7014
Washington, DC 20530
202.616.0337
202.305.7643 (fax)

*Attorney of Record for Defendant United States of America*

David R. Hazelton, Esq.
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004-1304
202.637.2254
202.637.2201 (fax)

*Attorney for Contract Awardee McKesson Specialty Distribution, LLC*