**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | |
|---|---|
| GENERAL INJECTABLES & VACCINES, INC., | |
| Plaintiff, | No. 06-683C (Judge Eric G. Bruggink) |
| v. | Electronically Filed on October 20, 2006 |
| UNITED STATES OF AMERICA, | |
| Defendant, | |
| and | |
| MCKESSON SPECIALTY DISTRIBUTION LLC, | |
| Intervenor. | |

**REPLY IN OPPOSITION TO INTERVENOR'S CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Mark J. Biros
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue, NW
Suite 400 South
Washington, DC 20004-2533
202.416.6800
202.416.6899 (fax)

*Attorney of Record for Plaintiff General Injectables & Vaccines, Inc.*

*Of counsel:*

Lawrence Z. Lorber
James F. Segroves
Meredith C. Bailey
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue, NW
Suite 400 South
Washington, DC 20004-2533
202.416.6800
202.416.6899 (fax)

Gilbert J. Ginsburg
LAW OFFICES OF GILBERT J. GINSBURG
1250 24th Street, NW
Suite 350
Washington, DC 20037
202.776.7772
202.776.7773 (fax)

# TABLE OF CONTENTS


SUMMARY OF ARGUMENT ........................................ 1

STANDARD OF REVIEW ........................................ 2

ARGUMENT ........................................ 3

I. THE FACTS UPON WHICH CDC BASED ITS DECISION ARE CLEARLY ERRONEOUS ........................................ 3

A. Projects With Contracts Expiring Prior To March 31, 2007 ........................................ 3

B. The New York Multi-State Contract ........................................ 4

C. The New Jersey Contract ........................................ 5

II. AVOIDING POLITICAL EMBARRASSMENT DOES NOT CONSTITUTE "URGENT AND COMPELLING CIRCUMSTANCES" ........................................ 6

III. STRIPPED OF ITS "EMERGENCY" VENEER, THE F&D PRESENTS NOTHING MORE THAN A "THE NEW CONTRACT IS BETTER" ARGUMENT, WHICH IS INSUFFICIENT TO OVERRIDE A PRE-AWARD STAY ........................................ 9

IV. DEFENDANT AND MCKESSON FAIL TO SHOW WHY "URGENT AND COMPELLING CIRCUMSTANCES" EXISTED SUCH THAT MCKESSON (AND ONLY MCKESSON) HAD TO PERFORM THE CONTRACT ........................................ 11

V. IN ITS RUSH TO AWARD THE CONTRACT TO MCKESSON, CDC VIOLATED THE PLAIN LANGUAGE OF CICA ........................................ 12

VI. GIV HAS STANDING TO BRING THIS SUIT ........................................ 13

CONCLUSION ........................................ 15

# TABLE OF AUTHORITIES

## CASES

*Advanced Sys. Dev., Inc. v. United States*,
72 Fed. Cl. 25 (2006)........................................2, 10, 13

*Am. Fed'n of Gov't Employees v. United States*,
258 F.3d 1294 (Fed. Cir. 2001)........................................16

*Automation Techs., Inc. v. United States*,
--- Fed. Cl. ---, No. 06-599C, 2006 WL 2720642 (Sept. 21, 2006)........................................2

*Chapman Law Firm Co. v. United States*,
62 Fed. Cl. 464 (2004)........................................11

*Chapman Law Firm Co. v. United States*,
65 Fed. Cl. 422 (2005)........................................2

*CIGNA Gov't Servs., LLC v. United States*,
70 Fed. Cl. 100 (2006)........................................2, 11

*Citizens to Preserve Overton Park v. Volpe*,
401 U.S. 402 (1971)........................................2, 3

*DTH Mgmt. Group v. Kelso*,
844 F. Supp. 251 (E.D.N.C. 1993)........................................11, 13

*Info. Tech. & Applications Corp. v. United States*,
316 F.3d 1316 (Fed. Cir. 2003)........................................16

*Mo. Pub. Serv. Comm'n v. Fed. Energy Regulatory Comm'n*,
337 F.3d 1066 (D.C. Cir. 2003)........................................4

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983)........................................7

*RAMCOR Servs. Group, Inc. v. United States*,
185 F.3d 1286 (Fed. Cir. 1999)........................................2, 15

*Red River Serv. Corp. v. United States*,
60 Fed. Cl. 532,(2004)........................................16

*Sierra Military Health Servs., Inc. v. United States*,
58 Fed. Cl. 573 (2003)........................................16

## STATUTES


5 U.S.C. § 706 .......... 2

5 U.S.C. § 706(2)(A) .......... 2

28 U.S.C. § 1491(b)(1) .......... 2, 14, 15, 17

28 U.S.C. § 1491(b)(4) .......... 2

31 U.S.C. § 3551(2) .......... 16, 17

31 U.S.C. § 3553(c)(2) .......... 13

31 U.S.C. § 3553(c)(2)(A) .......... 8, 13

31 U.S.C. § 3553(c)(2)(B) .......... 13, 14

Administrative Dispute Resolution Act of 1996, Pub. L. No. 104-320, 110 Stat. 3870 .......... 14

Deficit Reduction Act of 1984, Pub. L. No. 98-369, 98 Stat. 494 .......... 3


## LEGISLATIVE MATERIALS


*Competition in Contracting Act of 1984: Hearings on H.R. 5184 Before a Subcomm. of the Comm. on Gov't Operations*, 98th Cong. (1984) .......... 8


## REGULATIONS


48 C.F.R. § 33.104(b)(2) .......... 13


## OTHER AUTHORITIES


Robert M. Hanson, *CICA Without Enforcement: How Procurement Officials and Federal Court Decisions are Undercutting Enforcement Provisions of the Competition in Contracting Act*, 6 Geo. Mason L. Rev. 131 (1997) .......... 3

Plaintiff General Injectables & Vaccines, Inc. ("GIV") hereby replies to the oppositions filed by Defendant United States of America ("Defendant") and Intervenor McKesson Specialty Distribution LLC ("McKesson") against GIV's Motion for a Temporary Restraining Order and Preliminary Injunction. The instant reply also serves as an opposition to McKesson's cross-motion for judgment on the administrative record.[1]

## SUMMARY OF ARGUMENT

It is axiomatic that agency decision making based on inaccurate facts is arbitrary and capricious. The decision of the Centers for Disease Control and Prevention ("CDC") here to override the pre-contract-award stay issued under the Competition in Contracting Act ("CICA") was based on clearly erroneous facts. CDC's decision, which was contained in the agency's September 8, 2006 Findings and Determination ("F&D"), is premised in large part upon the agency's desire to avoid political embarrassment caused by its inability to meet self-imposed deadlines for consolidating the currently decentralized system of vaccine distribution under the Vaccines for Children program ("VFC"). For the reasons stated herein, and for those reasons more fully described in GIV's October 2, 2006 memorandum of law, this Court should rule that CDC's decision to override the pre-award stay was arbitrary and capricious.[2]

---

[1] In so moving, it is unclear whether McKesson intended its "Statement of the Case" to function as a "Statement of Facts," which is required under RCFC 52.1(b). GIV disputes the following factual statements in McKesson's "Statement of the Case": (1) all references by McKesson to specific bid pricing information (McKesson Opp'n at 4), as the accuracy of such information is currently the subject of a dispute before the Government Accountability Office ("GAO"); and (2) that the supplemental protest filed on August 25, 2006, was procedurally deficient (*id.* at 5). GIV does not possess sufficient information to confirm or deny the truth of statements in which McKesson does not cite to the administrative record or Plaintiff's motion for injunctive relief. *See id.* at 7-8.

[2] As noted earlier, this Court need not address the four traditional injunctive relief factors in order to grant GIV the relief it seeks. *See* Pl.'s Mem. at 10-11 (citing *Automation Techs., Inc.*
(continued)

**STANDARD OF REVIEW**

An agency's decision to override a pre-award stay is subject to judicial review under the Tucker Act, 28 U.S.C. § 1491(b)(1). *RAMCOR Servs. Group, Inc. v. United States*, 185 F.3d 1286, 1290 (Fed. Cir. 1999). The Tucker Act provides that this Court should review the agency's decision using the standards established by the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. 28 U.S.C. § 1491(b)(4).

The APA directs a court to overturn agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Supreme Court precedent instructs that the "standards of § 706 require the reviewing court to engage in a substantial inquiry." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415 (1971). To determine whether agency action is arbitrary and capricious, the reviewing court must conduct a "thorough, probing, in-depth review" of whether the agency action "was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* at 413-16.[3]

---

*v. United States*, --- Fed. Cl. ---, No. 06-599C, 2006 WL 2720642, at *9 n.5 (Sept. 21, 2006); *Advanced Sys. Dev., Inc. v. United States*, 72 Fed. Cl. 25, 36 (2006); *CIGNA Gov't Servs., LLC v. United States*, 70 Fed. Cl. 100, 114 (2006); *Chapman Law Firm Co. v. United States*, 65 Fed. Cl. 422, 424 (2005)). Instead, it may treat GIV's motion for injunctive relief as a motion for declaratory relief or a motion for judgment on the administrative record pursuant to RCFC 52.1(b). However, even if the Court finds it necessary to do so, the injunctive relief factors have been satisfied as explained in GIV's previous memorandum of law. *See* Pl.'s Mem. at 21-26.

[3] Contrary to Defendant's contention that CICA grants an agency "significant discretion" in choosing to override a pre-award stay, *see* Def.'s Opp'n at 15, Congress enacted CICA specifically to *limit* agency discretion. CICA, which was enacted as part of the Deficit Reduction Act of 1984, Pub. L. No. 98-369, tit. VII, 98 Stat. 494, 1175-1203, was signed into law "during a time of controversy over Department of Defense (DOD) procurement practices that was punctuated by revelations that the military was paying exorbitant prices for products, such as $435 for a hammer," Robert M. Hanson, *CICA Without Enforcement: How Procurement Officials and Federal Court Decisions are Undercutting Enforcement Provisions of the*

(continued)

# ARGUMENT

## I. THE FACTS UPON WHICH CDC BASED ITS DECISION ARE CLEARLY ERRONEOUS

CDC justified its decision to override the pre-award stay by asserting that "[a]ny delay in the award of the contract [would] have a negative public health impact." AR Tab 20 at 227 (F&D ¶ 7). According to CDC, a "disruption" in the distribution of vaccine would occur as a result of "slippage" in the transitioning to the new centralized distribution system. *Id.* In making this assertion, CDC listed "specific state examples," all of which were either factually incorrect or misleading. As a result, CDC's decision to override the pre-award stay was arbitrary and capricious, for "[r]eliance on facts that an agency knows are false at the time it relies on them is the essence of arbitrary and capricious decision making." *Mo. Pub. Serv. Comm'n v. Fed. Energy Regulatory Comm'n*, 337 F.3d 1066, 1075 (D.C. Cir. 2003).

### A. Projects With Contracts Expiring Prior To March 31, 2007

The F&D first points to state and local governments (collectively, "Projects") whose existing vaccine distribution contracts expire prior to March 31, 2007. It states:

> Multiple State Contracts with existing vaccine distributors expire prior to March 31, 2007—26 Grantees, distributing approximately 62% of the public doses in the U.S. (over 40 million doses per year) have contracts with *a vaccine distributor*. All of these State contracts expire prior to March 31, 2007. Further delays in contract award cut into the implementation timing for transition—potentially putting over half of the program's vaccine distribution at risk. Any slippage in the federal contract award will result in these states not having vaccine distribution services. *Texas and California are both in this category.*

---

*Competition in Contracting Act*, 6 Geo. Mason L. Rev. 131, 132-33 (1997). CICA's stay provisions were designed to constrain procuring agencies who—as has happened in this case—would "rush into contract awards and get performance underway so that, by the time the Comptroller General's recommendation came out, it would be too late and too costly to change contract awards, if such was the recommendation." *PGBA, LLC v. United States*, 57 Fed. Cl. 655, 660 n.8 (2003).

AR Tab 20 at 227 (F&D ¶ 7.A) (emphasis added).

CDC's assertion that Texas and California are "in this category" is false. Texas's distribution contract, which is with GIV, expires on August 31, 2007. *See* Ex. M to Suppl. Puckett Decl.[4] California's distribution contract, also with GIV, expires on June 30, 2008. *See* Ex. B to Suppl. Puckett Decl. And, the unidentified "distributor" CDC references above—GIV—has represented here and to CDC that it will continue to distribute vaccine to ensure that the GAO bid protest process is not corrupted. This means there will be no interruption of service to the Projects. *See* Suppl. Puckett Decl. ¶ 14.

**B. The New York Multi-State Contract**

Next, the F&D asserts:

> New York State Multi-state Distribution contract—This is a single contract with *a vaccine distributor* that currently services 14 grantees and represents over 20% of the nation's public vaccine distribution. It expires March 31, 2007—*with no additional extensions allowed*. This contract is not currently in the process of being renegotiated, under the assumption that these services will be replaced by the federal contract. Any slippage in the federal contract award will result in other states, including New York, not having vaccine distribution services.

AR Tab 20 at 228 (F&D ¶ 7.B) (emphasis added).

This too is erroneous. The New York Multi-State contract allows for extensions:

> SHORT TERM EXTENSION:
>
> In the event the replacement contract has not been issued, any contract let and awarded hereunder by the State, may be extended unilaterally by the State for an additional period of up to one month upon notice to the contractor [GIV] with the same terms and conditions as the original contract including, but not limited

---

[4] References to the "Suppl. Puckett Decl." refer to the Supplemental Declaration of Tracy B. Puckett, GIV Senior Manager for Government Contracting, a copy of which is attached as Exhibit 1 to Plaintiff's Second Motion to Supplement the Administrative Record. Ms. Puckett's original declaration is attached as Exhibit 1 to Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction.

> to, quantities (prorated for such one month extension), prices, and delivery requirements. With the concurrence of the contractor, the extension may be for a period of up to three months in lieu of one month. However, this extension terminates should the replacement contract be issued in the interim.

Ex. I to Suppl. Puckett Decl.[5] Consequently, there is no immediate concern for interruption of vaccine distribution service here as well.

### C. The New Jersey Contract

For its last "specific state example," the F&D asserts:

> New Jersey Contract with a vaccine distributor—expires November 30, 2006—this is the last vaccine distribution contract held by Bellco, who is interested in exiting the business of vaccine distribution altogether. To date, Bellco has not been willing to extend its contract. The federal contract should have been awarded no later than August 31st in order to transition New Jersey onto the federal contract by November 30th. Any further slippage in the timeline jeopardizes New Jersey's ability to supply vaccine to their immunization providers. This will result in denied immunization services through the state starting December 1, 2006.

AR Tab 20 at 228 (F&D ¶ 7.C).

The record in this case, provided the Court permits the supplementation requested by GIV, contradicts explicitly any claim of a possible disruption of service to New Jersey. In March of 2006, CDC asked GIV, and GIV agreed, to service New Jersey under the New York Multi-State contract to ensure there would be no gap in service after November 30, 2006, the date CDC now claims will be the last day of service to New Jersey. *See* Puckett Decl. ¶ 17. When CDC

[5] Defendant and McKesson repeat this erroneous representation in their respective oppositions. *See* Def.'s Opp'n at 20, 25; McKesson Opp'n at 16. In addition, Defendant has submitted the declaration of Jeanne Santoli, Deputy Director of the Immunizations Services Division in the National Center for Immunization and Respiratory Diseases at CDC. Ms. Santoli also repeats the F&D's erroneous assertion that the New York Multi-State contract does not allow for extensions. *See* Santoli Decl. ¶ 9.

issued the F&D, CDC knew that GIV was proceeding to complete arrangements with New Jersey officials to do just that. *See* Puckett Decl. ¶¶ 18-19.[6]

## II. AVOIDING POLITICAL EMBARRASSMENT DOES NOT CONSTITUTE "URGENT AND COMPELLING CIRCUMSTANCES"

Defendant contends that "*after careful consideration,* [CDC] determined that it was in the best interest of the United States, due to urgent and compelling circumstances, to award the contract . . . to McKesson notwithstanding GIV's pending protests at the GAO." Def.'s Opp'n at 9 (emphasis added). The pre-decisional administrative record tells a much different story.[7]

According to the administrative record, CDC's decision to override the pre-award stay originated in an internal CDC memorandum authored by Kimberly Lane. *See* AR Tab 14 at 205-06. Ms. Lane served as the chairperson of the technical evaluation panel that reviewed bids for the centralized vaccine distribution contract. *See* AR Tab 14 at 205. Ms. Lane's memorandum eventually served as the foundation for CDC's written decision overriding the pre-award stay.

---

[6] Defendant also asserts that "GIV's three protests are currently pending before the GAO. The GAO hopes to issue decisions upon the merits of those protests by January 18, 2007." Def.'s Opp'n at 9. This is incorrect on two grounds. First, GAO has stated that it will issue a decision on the first protest by November 15, 2006, at which time it also plans to issue a decision on the second protest. *See* AR Tab 33 at 368. Second, GAO has said that a decision will be issued on GIV's third protest no later than January 8, 2007, *not* January 18, 2007. *See id.* While the difference of ten days may not be significant, the lack of precision of the factual assertion is.

[7] Almost all of what Defendant asserts as justification for taking the extraordinary step of overriding the pre-award stay are post-hoc rationalizations. For example, Defendant cites "pandemic preparedness" needs and a mumps outbreak that occurred several years ago. *See* Def.'s Opp'n at 31-32 (citing Santoli Decl.). None of these assertions were in the F&D. Such after-the-fact justifications should be given no weight by this Court. *See Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983); *see also Advanced Systems*, 72 Fed. Cl. at 34 (rejecting declaration of agency official appended to government opposition and holding that CICA override determination is not an "evolving document").

*Compare* AR Tab 14 at 205-06 (internal CDC memorandum authored by Ms. Lane), *with* AR Tab 20 at 227-28 (F&D ¶ 7).

In forwarding her memorandum to other CDC personnel via an email dated August 18, 2006, Ms. Lane stated:

> Attached you'll find the urgent award justification we discussed yesterday. There is a sense of urgency ---several grantees do NOT have distribution services starting December 1st. In my opinion, we must award by August 31st in order to avoid major vaccine distribution disruptions. New Jersey is the first to be impacted with others following including California and New York. *This will become a political issue if we do not deliver what we promised approximately two years ago*.
>
> Thanks in advance for your support to move this forward.

AR Tab 14 at 203 (emphasis added). The administrative record contains no documentation to support Ms. Lane's service disruption claim, which as explained above was factually erroneous.[8]

In sharp contrast to Ms. Lane's stated concerns that "[a]ny delay" in awarding the contract would have a negative public health impact, the August 31, 2006 email from the director of CDC's Procurement and Grants Office to Project managers conveys no sense of urgency:

> The Centralized Vaccine Distribution contract(s) is currently under review. As you may know, a pre-award protest was filed with the Government Accountability Office (GAO). CDC is working diligently to resolve the protest. We realize that major milestone dates for grantees transitioning to the centralized vaccine distribution contract can not [sic] be finalized until after contract award. Nevertheless, we will continue to plan for the pilot projects to launch 60 days after contract award. We'd like to thank you for your continued support and patience as the procurement team continues to complete its reviews.

---

[8] Further proof of the erroneous assertions of possible disruption if CDC did not award the contract is the reference to Rhode Island's email seeking to transition earlier in the process. *See* AR Tab 13 at 200. Rhode Island distributes its own vaccines through its own local health departments. *See* AR Tab 1 at 63; Suppl. Puckett Decl. ¶ 15. Consequently, if it does not transition to the new centralized distribution contract, no service will be disrupted. The state will just have to continue to distribute vaccine itself until the new contract is implemented.

AR Tab 19 at 224.

Ms. Lane's August 18, 2006 email, however, is extraordinarily revealing from a bureaucratic viewpoint. In the email, Ms Lane expresses her serious concern that "[t]his will become a political issue if we do not deliver what we promised approximately two years ago." AR Tab 14 at 203. The need to avoid political embarrassment does not constitute "urgent and compelling circumstances which significantly affect interests of the United States" under 31 U.S.C. § 3553(c)(2)(A).

The creation of "emergencies" by federal agencies is not a new phenomenon. The principal architect of CICA's stay provisions and chairman of the House Committee on Government Relations was well aware of the fact that agencies would create "emergencies" in order to speed the procurement process. In hearings on the House bill that eventually supplied CICA's pre-award stay provision, Representative Jack Brooks expressed his extreme displeasure with this practice, stating:

> I just want to observe that over the years the best way to run a real fandango through the Government is to set up an emergency. That's the way some agencies operate.
>
> Any need that they have, they build into an emergency. They say it is critical and vital and essential, and they want it right now. They have no more time. . . . Everything will go to pot, we won't be able to operate. It has been going on for years. However, I am just not convinced. I think you must get them by the chain and jerk them good. . . .

*Competition in Contracting Act of 1984: Hearings on H.R. 5184 Before a Subcomm. of the Comm. on Gov't Operations*, 98th Cong. 45-46 (1984). CDC's conduct in overriding the pre-award stay at issue in this case shows that these words are as true today as they were more than twenty years ago.

## III. STRIPPED OF ITS "EMERGENCY" VENEER, THE F&D PRESENTS NOTHING MORE THAN A "THE NEW CONTRACT IS BETTER" ARGUMENT, WHICH IS INSUFFICIENT TO OVERRIDE A PRE-AWARD STAY

The F&D asserts:

> Delaying transition to a new distributor delays any potential financial savings that may be realized, including replacement insurance for inventoried doses. The federal centralized vaccine distribution contract award will save CDC approximately $6 million on an annual basis. Delaying transition postpones non-financial benefits of system [sic]—including improved visibility of inventory and shipped doses which are critical items during vaccine shortages.

AR Tab 20 at 228 (F&D ¶ 7.D). Defendant and McKesson spend a sizeable portion of their respective oppositions touting the purported benefits of the new centralized vaccine distribution contract. Such benefits include improved visibility of inventory and the ability to better track shipments of vaccine. *See* Def.'s Opp'n at 20; McKesson Opp'n at 12, 19. GIV did not specifically address these supposed "benefits" in its moving papers because, as a matter of law, an allegation that a new contract is better than the old is insufficient to override a CICA stay. *See, e.g.*, *Advanced Systems*, 72 Fed. Cl. at 28; *PGBA*, 57 Fed. Cl. at 662.

McKesson challenges the precedential value of *Advanced Systems* where there is a "lack of an incumbent . . . contract" claiming GIV "misunderstands the situation." McKesson Opp'n at 19. Defendant and McKesson make much of the fact that GIV was not the incumbent on the contract recently awarded to McKesson.[9] It is true that "there is no incumbent *Federal* contractor" here. However, that is beside the point. The federal contract is merely an attempt to centralize the vaccine distribution system *already in existence and maintained by the Projects*

[9] For example, Defendant proclaims that "[t]his case presents the unusual situation where there is no incumbent Federal contractor to provide essential services during the GAO protest period." Def.'s Opp'n at 10; *see also* McKesson Opp'n at 2, 8.

*themselves*.[10] GIV already services all but one of these Projects that do not distribute the vaccines themselves. Therefore GIV serves as the *de facto* incumbent.

McKesson's argument that "non-financial benefits" justify CDC's override of the pre-award stay must similarly fail. McKesson reiterates the benefits of improved visibility of inventory and better tracking of shipments of vaccines. McKesson Opp'n at 12 (citing AR Tab 20 at 228). McKesson argues that "[a] better ability to respond to vaccine shortages, through an improved ability to track shipments and better visibility of inventories, presents urgent and compelling circumstances to override a pre-award stay." McKesson Opp'n at 12. The Court of Federal Claims in *PGBA* rejected the argument that "the mere fact that . . . new contracts would be better than the old is enough to support the override decision under either prong of section 3553," concluding that "this sort of benefit is [not] what Congress had in mind in allowing a [CICA] override." *PGBA*, 57 Fed. Cl. at 662. *PGBA* and its progeny teach that cost savings is not an "urgent and compelling circumstance." *See Advanced Systems*, 72 Fed. Cl. at 31; *CIGNA*, 70 Fed. Cl. at 113; *Chapman Law Firm Co. v. United States*, 62 Fed. Cl. 464, 466 (2004). Moreover, CDC's reliance upon a $6 million *annual* cost savings to justify urgent action makes no common sense. The fact that one may save money during the course of a twelve-month period hardly supports urgent action. For, no matter how urgently one acts, the savings only come after a twelve-month period.

---

[10] McKesson goes so far as to include a heading in its brief that is internally inconsistent. On page 13 of its brief, McKesson uses the following heading: "There is No Incumbent Contractor for this Procurement and the CDC Properly Found an Urgent and Compelling Need to Award the Contract and Avoid Disruption in the System." How can a "disruption in the system" occur if there is no "system" already in place?

## IV. DEFENDANT AND MCKESSON FAIL TO SHOW WHY "URGENT AND COMPELLING CIRCUMSTANCES" EXISTED SUCH THAT MCKESSON (AND ONLY MCKESSON) HAD TO PERFORM THE CONTRACT

To override a pre-award stay, CICA requires an agency to determine that performance by the "proposed contractor presents urgent and compelling circumstances[,] not merely that performance of the contract itself is urgent and compelling[.]" *DTH Mgmt. Group v. Kelso*, 844 F. Supp. 251, 256 (E.D.N.C. 1993); *see also PGBA*, 57 Fed. Cl. at 63 (citing *DTH Management Group* with approval). CDC's decision to override the pre-award stay was arbitrary and capricious because CDC proffered no reason in its F&D as to why it was essential for McKesson (and only McKesson) to perform under the contract during the pendency of GIV's bid protests. *See* Pl.'s Mem. at 18-19.

Neither Defendant nor McKesson has proffered a reason as to why it was essential that McKesson—a newcomer entering the market of distributing vaccine to Projects—had to begin performance under the contract before GAO could render its decision.[11] Defendant ignores the issue completely. McKesson relegates its response to a footnote reading: "GIV's entire section invoking *DTH Management Group* . . . for the purpose of claiming that the CDC had to justify its choice of McKesson Specialty over the incumbent is similarly misguided. Once again, there is no incumbent, so the 'availability of plaintiff to *continue* the services' does not exist. *Id.* at 256 (emphasis added)." McKesson Opp'n at 19 n.3. As explained above, McKesson's argument

[11] In fact, the administrative record reflects that Projects trusted GIV and were apprehensive about McKesson being awarded the contract. For example, in an August 23, 2006 memorandum from a California official to CDC, the California official states: "California's experience with distributors has varied. While we have had a very successful working relationship with GIV[,] we have had less [than] optimal results working with other distributors." AR Tab 15 at 209. Conversely, a September 15, 2006 email from Booz Allen Hamilton's John Visser to CDC recounts Mr. Visser's conversation with an Indiana official in which the official was "worried about the new distributor [McKesson]." AR Tab 24 at 243.

that there is no "incumbent" contradicts the reality that, given its existing distribution contracts with VFC participants, GIV, not McKesson, was best positioned to service VFC participants while the GAO protest process continued. The failure of CDC to explore the option of having the contracts extended is a legal deficiency. *Advanced Systems*, 72 Fed. Cl. at 32. Because "urgent and compelling circumstances" did not require that the contract be awarded to McKesson, CDC's F&D was arbitrary and capricious. *DTH Management*, 844 F. Supp. at 256.[12]

## V. IN ITS RUSH TO AWARD THE CONTRACT TO MCKESSON, CDC VIOLATED THE PLAIN LANGUAGE OF CICA

CICA provides that in order to "authorize the award" of a contract that is the subject of a pre-award protest, the procuring agency must satisfy two conditions. *See* 31 U.S.C. § 3553(c)(2). First, the "head of the procuring activity" must issue a "written finding that urgent and compelling circumstances which significantly affect interests of the United States will not permit waiting" for GAO's decision on the bid protest. § 3553(c)(2)(A). Second, the contract cannot be awarded until "*after* the Comptroller General is advised *of that finding*." § 3553(c)(2)(B) (emphasis added); *see also* 48 C.F.R. § 33.104(b)(2) ("A contract award shall not be authorized until the agency has notified the GAO of the finding in subparagraph (b)(1) of this section [referring to the agency's "urgent and compelling circumstances" finding].").

Neither Defendant nor McKesson contest the timing of the following events: (1) CDC awarded the contract to McKesson on September 12, 2006; (2) that same day, CDC notified GAO that the contract had been awarded to McKesson; and (3) on September 13, 2006, CDC

[12] Curiously, while CDC issued the clarion call that disruptions will occur if it did not act quickly at more than several points, it notes "[i]t is not clear" whether the present contracts can be extended. *See* Santoli Decl. at ¶¶ 8, 28; *see also* Def.'s Opp'n at 22, 25. Given its responsibility, the fact that CDC is still "not clear" about the contract extension options contravenes dramatically its assertion in the F&D that it made the decision "after careful consideration."

advised GAO of the "urgent and compelling circumstances" finding. *See* AR Tabs 22-23; *see also* Def's Opp'n at 9; McKesson Opp'n at 6-7. Defendant misses the import of the foregoing completely, arguing: "There is no statutory prohibition against notifying the GAO and awarding the contract on the same day." Def.'s Opp'n at 19. That much is true; however, advising GAO of the contract award does *not* satisfy CICA, as the statute explicitly states that a contract may not be awarded until "*after* the Comptroller General is advised of that finding [referring to the "urgent and compelling circumstances" finding]." 31 U.S.C. § 3553(c)(2)(B) (emphasis added). Because CDC awarded the contract to McKesson *before* advising GAO of the "urgent and compelling circumstances" finding, CDC violated the plain language of CICA in its rush to award the contract to McKesson.[13]

## VI. GIV HAS STANDING TO BRING THIS SUIT

As amended by the Administrative Dispute Resolution Act of 1996, Pub. L. No. 104-320, § 12(a), 110 Stat. 3870, 3874, the Tucker Act provides this Court with jurisdiction to "render judgment on an action by an interested party objecting to . . . any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). It is well-established that the Court of Federal Claims has jurisdiction under § 1491(b)(1) to decide cases challenging an agency's decision to override a pre-award stay. The

[13] Defendant's counsel, in her rush to paint GIV as a "sore loser" with no chance of ever winning the CDC contract, impugns the ethical standards of counsel for GIV, stating: "In fact, GIV's goal, as articulated by its counsel during the October 3 telephone conference with this Court, is for the agency to re-solicit the procurement so that GIV, *now armed with its competitors' cost and pricing information*, could perhaps submit a proposal that is not [] more than its closest competitor." Def.'s Opp'n at 21 (emphasis added). Such a personal attack is not only unjustified, it is also unprofessional. Every attorney involved in this matter is subject to a GAO protective order and a protective order issued by this Court, both of which prohibit counsel from sharing protected information with their client. Personally attacking the ethics of one's adversary demonstrates the paucity of facts Defendant has to support its position.

U.S. Court of Appeals for the Federal Circuit so held in a case with facts almost identical to that currently before this Court. *See RAMCOR*, 185 F.3d at 1290.

In *RAMCOR*, the plaintiff had been eliminated from the competitive range and had filed a pre-award protest with GAO, staying the award of the contract. *See id.* at 1287. The procuring agency issued a decision overriding the stay and awarded the contract to another bidder. *See id.* The plaintiff then sought and obtained preliminary injunctive relief in this Court based on inadequacies in the procuring agency's override determination; however, after GAO decided against the plaintiff in its bid protest, the Court lifted the injunction and, in rejecting the plaintiff's subsequent request for attorneys' fees under the Equal Access to Justice Act, determined that it lacked jurisdiction under § 1491(b)(1). *See id.* at 1288. On appeal, the Federal Circuit specifically held that the Court of Federal Claims had jurisdiction to adjudicate the propriety of the agency's decision to override the pre-award stay. *Id.* at 1289.

McKesson attempts to circumvent *RAMCOR* by arguing that GIV is somehow not an "interested party" within the meaning of § 1491(b)(1). *See* McKesson Opp'n at 21.[14] McKesson posits that to be an "interested party," GIV must establish prejudice by showing that "there was a substantial chance [GIV] would have received the contract award but for the alleged error in the procurement process." McKesson Opp'n at 22 (citing *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1316, 1319 (Fed. Cir. 2003)). McKesson essentially argues that because GIV was eliminated from the competitive range, it cannot show the requisite level of prejudice. *See id.* at 22-23.

---

[14] Interestingly, although it asserts that "[s]tanding to sue is a threshold requirement in every federal action," McKesson neglects to raise this issue until page 21 of its brief. Defendant, on the other hand, chooses not to join McKesson in its flawed standing argument.

Not only does *RAMCOR* foreclose McKesson's argument, because the substance of CDC's decision to award the contract to McKesson is not at issue in the case at bar, the authorities cited by McKesson are inapposite. *See Red River Serv. Corp. v. United States*, 60 Fed. Cl. 532, 539 (2004).[15] In order to be an "interested party," the protestor need only show (1) a connection to the procurement; and (2) an economic interest in the procurement. *Am. Fed'n of Gov't Employees v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001); *see also* 31 U.S.C. § 3551(2) (defining an "interested party" as an "actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract"); *Sierra Military Health Servs., Inc. v. United States*, 58 Fed. Cl. 573, 577 (2003) (holding that 28 U.S.C. § 1491(b)(1) must be construed in accordance with 31 U.S.C. § 3551(2)).

GIV has clearly established that it has a "connection to the procurement" at issue, as it submitted a timely bid and was eliminated from the competitive range. *See* AR Tab 20 at 227. In addition, GIV has an undeniable "economic interest in the procurement." McKesson's "standing" argument is nothing more than a vehicle for it to criticize the supposed "exorbitance" of GIV's bid.

## CONCLUSION

The Court should deny McKesson's cross-motion for judgment on the administrative record and grant GIV's motion for declaratory and injunctive relief by declaring invalid CDC's decision to overrule the pre-award stay. Alternatively, GIV asks that the Court issue an order

[15] In *Red River*, this Court reviewed a long line of bid protest cases in which the Federal Circuit had determined that a plaintiff must satisfy the threshold standing requirement by demonstrating competitive prejudice through a showing of a "substantial chance" that it would receive a contract award. *See* 60 Fed. Cl. at 538. The Court found the standard posed by those cases to be inapplicable to the pre-award case before it, as they all addressed standing in the *post*-award context. *See id.* at 538-39.

enjoining CDC and McKesson from beginning or continuing performance under the contract until GAO resolves GIV's pending bid protests.

Dated: October 20, 2006

Respectfully submitted,

By: s/Mark J. Biros
Mark J. Biros
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue, NW
Suite 400 South
Washington, DC 20004-2533
202.416.6800
202.416.6899 (fax)

*Attorney of Record for Plaintiff General Injectables & Vaccines, Inc.*

*Of counsel:*

Lawrence Z. Lorber
James F. Segroves
Meredith C. Bailey
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue, NW
Suite 400 South
Washington, DC 20004-2533
202.416.6800
202.416.6899 (fax)

Gilbert J. Ginsburg
LAW OFFICES OF
GILBERT J. GINSBURG
1250 24th Street, NW
Suite 350
Washington, DC 20037
202.776.7772
202.776.7773 (fax)

**CERTIFICATE OF FILING**

I hereby certify that on October 20, 2006, a copy of the foregoing Reply in Opposition to Intervenor's Cross-Motion for Judgment on the Administrative Record and in Support of Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Mark J. Biros
MARK J. BIROS