**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | |
|---|---|
| GENERAL INJECTABLES & VACCINES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant,<br><br>and<br><br>MCKESSON SPECIALTY DISTRIBUTION LLC,<br><br>Intervenor. | No. 06-683C<br>(Judge Eric G. Bruggink)<br><br>Electronically Filed on October 23, 2006 |

**REPLY IN SUPPORT OF PLAINTIFF'S FIRST**
**MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD**

On October 13, 2006, Plaintiff General Injectables & Vaccines, Inc. ("GIV") filed a motion formally requesting that the administrative record be supplemented with certain declarations and exhibits included with GIV's October 2, 2006 Motion for a Temporary Restraining Order and Preliminary Injunction ("TRO Motion"). Defendant United States of America ("Defendant") and Intervenor McKesson Specialty Distribution LLC ("McKesson") oppose GIV's request. Their opposition is not legally well-grounded. Consequently, GIV's request should be granted.

**ARGUMENT**

**I. GIV'S REQUEST TO SUPPLEMENT THE ADMINISTRATIVE RECORD IS SUPPORTED BY WELL-ESTABLISHED PRECEDENT**

GIV based its request to supplement the administrative record on a number of the so-called "*Esch* exceptions." *See* Pl.'s Mot. at 4 (citing *Esch v. Yeutter*, 876 F.2d 976 (D.C. Cir.

1989)). For example, the administrative record here should be supplemented because (1) the decision of the Centers for Disease Control and Prevention ("CDC") to override the pre-award stay was not adequately explained in the record before the court; (2) CDC failed to consider factors that were relevant to its override decision; and (3) supplementation of the administrative record would provide the Court with more evidence, which would enable it to understand the legal issues more clearly. *See* Pl.'s Mot. at 5-8.

As to the request to supplement the administrative record because CDC's override decision was not adequately explained, McKesson accuses GIV of "completely distort[ing] the true intent and focus of this exception." McKesson Opp'n at 4. According to McKesson, the first *Esch* exception may only be invoked "for the agency to supply more information on its own or for the court to order limited discovery." *Id.* McKesson cites *Chapman Law Firm Co. v. United States*, 71 Fed. Cl. 124 (2006), to support its assertion. *See* McKesson Opp'n at 4. That very decision demonstrates the fallacy of McKesson's argument, for there this Court allowed the private-party plaintiff to supplement the administrative record under the first *Esch* exception. *See* 71 Fed. Cl. at 127; *see also MVM, Inc. v. United States*, 46 Fed. Cl. 126, 135 n.14 (2000).

Although the legal issues in this case are not "complex," our request to supplement the administrative record with evidence regarding GIV's longstanding participation in the Vaccines for Children program ("VFC") would assist the Court in addressing those legal issues. *See* Pl.'s Mot. at 8. McKesson countered that the "complex case" exception only applies to cases where "technical issues" are raised. McKesson Opp'n at 6. As with the first *Esch* exception, McKesson's narrow interpretation of the "complex case" exception does not comport with this Court's previous decisions. For example, in *Gentex Corp. v. United States*, 58 Fed. Cl. 634 (2003), the Court allowed the plaintiff to supplement the administrative record with affidavits

explaining the substance of the procuring agency's decision to override a post-award stay, *see id.* at 649.

## II. THE DECLARATIONS PROVIDE RELEVANT INFORMATION

Defendant and McKesson each complain that the declarations included with GIV's TRO Motion contain irrelevant information. *See* Def.'s Opp'n at 2-3; McKesson Opp'n at 4. Both are incorrect as matter of law and fact.

### A. The Question of When the Government Accountability Office Was Advised of CDC's Determination To Override the Pre-Award Stay Is Relevant

GIV has asked that the administrative record be supplemented with the declaration of Lawrence Lorber, outside counsel to GIV in its pending bid protest. *See* Pl.'s Mot. at 8. Mr. Lorber's declaration describes the timing of events relative to CDC's notification of GAO concerning its decision to override the pre-award stay. In particular, Mr. Lorber's declaration establishes that CDC awarded the contract to McKesson before advising the Government Accountability Office ("GAO") of CDC's supposed finding of "urgent and compelling circumstances." *See* Lorber Decl. ¶¶ 8-12.

Defendant argues that "Mr. Lorber's 'chronology' does not serve any legitimate purpose." Def.'s Opp'n at 3. The plain language of the Competition in Contracting Act ("CICA") proves otherwise. For an agency to be "authorize[d] [to] award" a contract that is the subject of a pre-award protest, the procuring agency must satisfy two conditions. *See* 31 U.S.C. § 3553(c)(2). First, the "head of the procuring activity" must issue a "written finding that urgent and compelling circumstances which significantly affect interests of the United States will not permit waiting" for GAO's decision on the bid protest. § 3553(c)(2)(A). Second, the contract cannot be awarded until "*after* the Comptroller General is advised *of that finding.*" § 3553(c)(2)(B) (emphasis added). Because CDC awarded the contract to McKesson *before*

advising GAO "of that finding" (i.e., its supposed finding of "urgent and compelling circumstances"), CDC violated the plain language of CICA in its rush to award the contract to McKesson.[1]

In making its argument that the chronology of these events is irrelevant, Defendant accuses GIV of attempting to "create" evidence. *See* Def.'s Opp'n at 3. Such is not the case. Defendant proclaims that the "documents in this case tell us exactly the date on which the CDC advised the GAO *of the override*: September 12, 2006. AR 236." *Id.* (emphasis added). However, the one-page letter to which Defendant cites says nothing about "urgent and compelling circumstances"; instead, it merely informed GAO that CDC had already awarded the contract to McKesson. *See* AR Tab 22 at 236. The record in this case demonstrates that CDC did not advise GAO of the override determination until the next day—and only after GAO contacted CDC demanding to know upon what basis the contract had been awarded. *See* AR Tab 20 at 237; Lorber Decl ¶¶ 12-15.[2]

---

[1] The language of CDC's September 12, 2006 letter to GAO clearly indicates that the contract had already been awarded to McKesson by the time that letter was sent to GAO. *See* AR Tab 22 at 236 ("an award has been made"; "[t]he Government awarded [the contract]"; "[t]he contract was awarded"). Even if CDC did not award the contract to McKesson until after sending the September 12, 2006 letter to GAO, advising GAO that the contract has been awarded does *not* satisfy CICA, as the statute explicitly states that a contract may not be awarded until after the Comptroller General is advised of the agency's "urgent and compelling circumstances" finding. 31 U.S.C. § 3553(c)(2)(B).

[2] Defendant's assertion that GAO was properly notified on September 12, 2006, also contradicts representations it made to this Court in a pleading filed on the exact same day as its opposition to the instant motion. *See* Def.'s Resp. in Opp'n to Pl.'s TRO Mot. at 9 (correctly noting that GAO was not notified of CDC's override determination until September 13, 2006). Other pertinent factual inaccuracies exist in Defendant's opposition to the instant motion. Defendant writes that the "documents in the record also tell us that the CDC's override was preceded by Findings and Determination dated September 7, 2006." Def.'s Opp'n at 3. In fact, the Findings and Determination was not signed by the requisite "head of [CDC's] procuring activity" until September 8, 2006. *See* AR Tab 20 at 229 (signature of Marc Weisman).

**B. McKesson's Erroneous "Incumbent" Argument**

McKesson posits that the following facts are irrelevant to the instant case: (1) CDC's failure to consider the ramifications of overriding the pre-award stay if GAO sustains GIV's bid protest and (2) CDC's failure to make a specific determination that "urgent and compelling circumstances" dictated that the new contract be awarded to McKesson and only McKesson. *See* McKesson Opp'n at 4-5. It makes this argument based on the fact that GIV was not the incumbent on the new *federal* contract. *See id.* at 5. The new federal contract centralizes the distribution of vaccine under the VFC by gradually converting what is now a decentralized distribution system operated by individual state and local governments. *See* AR Tab 1 at 6-7. As explained in the declaration of Tracy Puckett, GIV's Senior Manager for Government Contracting, GIV distributes to all but one of the state and local governments that use a third-party distributor in the VFC program. *See* Puckett Decl. ¶¶ 3-8.

The fact that GIV is not the incumbent on the new federal contract is a meaningless factual distinction that does nothing to weaken those authorities cited by GIV in its TRO Motion. For example, in *DTH Management Group v. Kelso,* 844 F. Supp. 251 (E.D.N.C. 1993), the court held that in order to override a pre-award stay, an agency must determine that performance by the "proposed contractor presents urgent and compelling circumstances[,] not merely that performance of the contract itself is urgent and compelling," *id.* at 256. The plaintiff, an incumbent contractor that provided certain services on a military base, filed a pre-award protest after it was informed that a contract for similar services would be awarded to another bidder. *See id.* at 253. The plaintiff filed suit after the procuring agency determined that "urgent and compelling circumstances" justified overriding the pre-award stay. *See id.* In overturning the

agency's override determination, the court noted that the agency had completely ignored the plaintiff's ability to provide services during the pendency of its bid protest. *Id.* at 256.

The continuation of services, not whether those services could be continued under a new contract with the procuring agency, was the logical basis for the court's decision that "urgent and compelling circumstances" did not exist.[3] Thus, the fact that GIV is not the incumbent on the new federal contract is immaterial. In overriding the pre-award stay and awarding the contract to McKesson, a new market entrant, CDC ignored GIV's ability to provide services while the GAO process was completed. As a result, the agency's override determination arbitrary and capricious.

**CONCLUSION**

Defendant accuses GIV of trying to create an administrative record that it "likes." Def.'s Opp'n at 5. While interesting hyperbole, the accusation is not accurate. Rather, GIV merely asks that the administrative record be complete and accurate. Accordingly, GIV respectfully

[3] Likewise, this Court's decision in *Advanced Systems Development, Inc. v. United States*, 72 Fed. Cl. 25 (2006), does not hinge on the fact that the plaintiff happened to have a preexisting contractual relationship with the procuring agency. Rather, it was the agency's failure to explain why it could not obtain services from sources other than the contract awardee that rendered the agency's override determination arbitrary and capricious. *See id.* at 32.

requests that the administrative record be supplemented to include the declarations and exhibits attached to GIV's TRO Motion.

Dated: October 23, 2006

Respectfully submitted,

By: s/Mark J. Biros

Mark J. Biros
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue, NW
Suite 400 South
Washington, DC 20004-2533
202.416.6800
202.416.6899 (fax)

*Attorney of Record for Plaintiff General Injectables & Vaccines, Inc.*

*Of counsel:*

Lawrence Z. Lorber
James F. Segroves
Meredith C. Bailey
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue, NW
Suite 400 South
Washington, DC 20004-2533
202.416.6800
202.416.6899 (fax)

Gilbert J. Ginsburg
LAW OFFICES OF
GILBERT J. GINSBURG
1250 24th Street, NW
Suite 350
Washington, DC 20037
202.776.7772
202.776.7773 (fax)

**CERTIFICATE OF FILING**

I hereby certify that on October 23, 2006, a copy of the foregoing Reply in Support of Plaintiff's First Motion to Supplement the Administrative Record was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Mark J. Biros
MARK J. BIROS